STATE OF NORTH CAROLINA v. CLAYTON DeVONNE MORRIS

No. 10

(Filed 13 October 1971)

**1. Criminal Law § 66— pretrial photographic identification**

Pretrial photographic identification procedure was not impermissibly suggestive where a robbery victim viewed 8-12 photographs from which he recognized the face of the defendant, prior to the robbery the witness had seen defendant a number of times at a home across the street from the site of the robbery and in the store where the robbery occurred, the victim told investigating officers that he knew defendant but did not know his name, and defendant testified at the trial that he knew the victim but not by name and that victim had waited on him when he went in the store.

**2. Criminal Law § 66— in-court identification — pretrial photographic identification**

In this armed robbery prosecution, the State presented clear and convincing proof that the victim's in-court identification of defendant was of independent origin from a pretrial photographic identification and was based on observations made by the victim at the scene of the robbery and on occasions prior to the robbery.

**3. Robbery § 4— armed robbery — sufficiency of evidence**

The State's evidence was sufficient to be submitted to the jury in this prosecution for the armed robbery of a cashier and clerk of a Little General Store.

APPEAL by defendant from *Hasty, J.*, at 30 November 1970 Schedule "A" Criminal Session, MECKLENBURG Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging armed robbery of one John Rohrer on 10 June 1970.

John Rohrer testified that he was a cashier and clerk at the Little General Store located on The Plaza in the City of Charlotte. He was preparing to close the store about 11:45 p.m. on 10 June 1970 and was placing the key in the burglar alarm when a man came up behind him, pulled his head back and put a knife to his throat. Defendant then walked up and Rohrer recognized him although he did not know his name. Rohrer said, "All right you've had your fun now, let me go." Defendant replied: "Open that damn door and open the safe." Defendant then pulled a pair of men's silk hose over his hands. Rohrer was forced to open the front door, pushed down the aisle to the location of the safe, and defendant demanded the combination.

Rohrer refused to open the safe or reveal the combination whereupon he was pushed to the floor with the knife still at his throat. The robbers again demanded the combination and Rohrer said he didn't have it. Defendant said: "Give us the combination to this safe or we will cut you until you do." At that time Rohrer was lying flat on the floor, facedown. The unidentified man with the knife then stabbed and cut Rohrer in the back twenty or twenty-five times. Defendant said: "Puncture his eardrums," and Rohrer immediately felt two knife blades go into his ears. The unidentified robber said, "He is still breathing," and defendant replied, "We will take care of that." The robbers then began cutting Rohrer on his back again. He felt blood streaming from his ears and from a gash over his right eye. A cut on the back of his head severed a nerve so that part of his skull now has no feeling. His left lung was punctured by a stab from the back. Finally, defendant said: "Hold his head up. I will cut his eye out." Mr. Rohrer felt a sharp pain, saw a flash of light, and that was all. He dropped his head to the floor and felt the blood pouring out. He prayed for his life. Shortly thereafter he felt one of the robbers step on his back and heard footsteps going away. The robbers took his wristwatch and his wallet containing $50 in cash.

Mr. Rohrer crawled to the front of the store, staggered out the door and a passing motorist called an ambulance and the police. He spent a week in the hospital and was released. He now wears a glass eye and numerous scars—over fifty stitches were taken in his left arm alone.

Upon timely objection to the in-court identification of defendant, the jury was excused and a *voir dire* conducted. Mr. Rohrer testified on *voir dire* that while he was in the hospital two detectives came to show him some pictures but he was unable to look at them and identified no one at that time. At a later time, Officer Travis showed him eight, ten or twelve pictures from which he recognized the face of the defendant. He has never been able to identify the other robber. He stated that he already knew defendant but didn't know his name and that he was in nowise influenced by the fact that he picked defendant from among the pictures. "I knew him without looking at those pictures." He further stated that prior to June 10 he had seen defendant in the yard of a

home across the street from the Little General Store a number of times; that defendant had been in the Little General Store between five and ten times making purchases; that he did not know defendant by name but gave the officers a facial description the night of the robbery, told them he had seen the defendant before, and described the clothing he was wearing.

Defendant offered no evidence on *voir dire*. The court found facts substantially in accord with the foregoing narration and concluded (1) there was nothing suggestive in the photographic identification procedure likely to give rise to misidentification and (2) the State had established by clear and convincing proof that the in-court identification of defendant was of independent origin, based on observations made by Rohrer at the scene of the robbery and on his previous knowledge of the defendant. Defendant's motion to suppress was denied and the in-court identification was admitted before the jury over objection.

Defendant's motion for nonsuit at the close of the State's evidence was denied. Defendant then offered evidence in the nature of alibi. He testified that he was nineteen years of age; that at the time of the robbery he was employed, making $115 a week; that he had been convicted of auto theft and armed robbery, was on parole on the date of the robbery in question, and was not permitted to hang around places at night; that he was not allowed to carry a knife; that on 10 June 1970 he went to his sister's home about 10:00 or 10:15 p.m. where he stayed until 12 o'clock midnight when his brother-in-law came in from work, awoke defendant and carried him home; that he was not at the Little General Store and did not assault and rob Mr. Rohrer. He stated that Mr. Rohrer had waited on him when he was in the Little General Store as a customer from time to time but denied having anything to do with the robbery. His testimony was corroborated by his sister Kathleen Mason and her husband Donald Mason.

Defendant's motion for nonsuit, renewed at the close of all the evidence, was denied. The jury convicted him of armed robbery, and he was sentenced to State Prison for a term of thirty years. He appealed to the Court of Appeals and the case was transferred to the Supreme Court for initial appellate review pursuant to the Court's general order dated 31 July 1970.

*Henry E. Fisher, Attorney for defendant appellant.*

*Robert Morgan, Attorney General; Eugene Hafer, Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

Defendant's first assignment of error is based on the contention that his in-court identification by the witness Rohrer was tainted by a pretrial photographic identification. He argues that the findings and conclusions of the trial judge to the contrary are erroneous and that his motion to suppress the in-court identification should have been allowed.

In *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S.Ct. 967 (1968), identification by photograph was expressly approved and the Court held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

[1] The test laid down in *Simmons* has been applied by this Court in many cases, including *State v. Accor and Moore,* 277 N.C. 65, 175 S.E. 2d 583 (1970) ; *State v. Jacobs,* 277 N.C. 151, 176 S.E. 2d 744 (1970) ; *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970), and *State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50 (1970). When applied to the facts in this case, there is small chance that the photographs viewed by the witness Rohrer led to misidentification of defendant. The record shows that the witness viewed eight, ten or twelve pictures from which he recognized the face of the defendant. Prior to the robbery the witness had seen the defendant a number of times on the lawn of a home across the street from the site of the robbery. Defendant had been in the Little General Store five to ten times making purchases and had been observed by the witness on those occasions. The witness told investigating officers that he knew defendant but did not know his name. Defendant himself testified at the trial: "Yes, I knew Mr. Rohrer but not by name. I did not know his name until the hearing. Yes, Mr. Rohrer waited on me when I went in the store." There is nothing in the record to support the contention that imper-

State v. Morris

missibly suggestive procedures were employed by the officers when the photographs were exhibited to the witness. Therefore, had the in-court identification been based on the pretrial photographic identification, it would have been competent anyway.

[2] The trial judge found as a fact on *voir dire,* however, that the State had established by clear and convincing proof that the in-court identification of defendant by the witness Rohrer was independent in origin, based on observations made by the witness at the scene of the robbery and on his previous observations of defendant. The evidence overwhelmingly supports this finding. "Such findings of fact, so made by the trial judge, are conclusive if they are supported by competent evidence in the record." *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966); *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970); *State v. McVay and Simmons,* 277 N.C. 410, 177 S.E. 2d 874 (1970); *State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971). We hold that defendant's motion to suppress the in-court identification was properly denied and the evidence properly admitted.

[3] Defendant assigns as error the denial of his motion for nonsuit at the close of all the evidence. Such motion draws into question the sufficiency of all of the evidence to go to the jury, and the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969). "Only the evidence favorable to the State will be considered, and the evidence relating to matters of defense or the defendant's evidence in conflict with that of the State will not be considered." *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608 (1971), and cases cited. Applying this well-established rule, there was ample evidence to require its submission to the jury and to support a verdict of guilty as charged. *State v. McWilliams,* 277 N.C. 680, 178 S.E. 2d 476 (1971). Defendant's motion for nonsuit was properly denied.

Prejudicial error does not appear, and the verdict and judgment must therefore be upheld.

No error.