STATE OF NORTH CAROLINA v. JEREMIAH LOCK, ALIAS
JERRY LOCK

No. 6

(Filed 14 November 1973)

1. **Criminal Law § 66— in-court identification — pretrial photographic identification**

In this prosecution for armed robbery, felonious assault and first degree murder, the trial court properly permitted the prosecuting witness to identify defendant as one of the persons who entered his store and committed the crimes charged where the court found upon supporting *voir dire* evidence that pretrial photographic procedures were not impermissibly suggestive and that the witness's identification of defendant was independent of and not influenced by the photographic identification.

2. **Criminal Law § 76— admissibility of confession**

*Voir dire* testimony of a police officer, corroborated by defendant's signed statement, was sufficient to support the trial court's determination that defendant's confession was free and voluntary and admissible in evidence.

3. **Robbery § 5— armed robbery — instructions — taking of money**

In this armed robbery prosecution, the trial court did not err in referring in the charge to the taking and carrying away of money as an element of the robbery.

4. **Criminal Law § 126— acceptance of verdict — repolling of jury**

The trial court did not err in accepting the verdict after one juror stated during the poll that she found defendant guilty of first degree murder "according to the law" where the court instructed the clerk to repeat the poll at which the juror repeated that her verdict was guilty of first degree murder and that she still assented thereto.

5. **Criminal Law § 26; Homicide § 31— murder in perpetration of robbery — separate punishment for robbery — double jeopardy**

Where defendant's conviction of first degree murder was based on a jury finding that the murder was committed in the perpetration of an armed robbery, no separate punishment could be imposed for the armed robbery.

APPEAL by defendant from *Brewer, J.,* February 5, 1973, Criminal Session, CUMBERLAND Superior Court.

In these criminal prosecutions the defendant, Jeremiah Lock, alias "Jerry" Lock, was charged by grand jury indictments with these criminal offenses: (1) The armed robbery of Joe's House of Cigarettes; (2) the felonious assault with a deadly weapon inflicting serious injury upon James Lampros;

State v. Lock

and (3) the first degree murder of Christine Lampros. Mr. and Mrs. Lampros were the proprietors of Joes' House of Cigarettes. The charges grew out of one transaction. They were consolidated and tried together.

The State's evidence disclosed that on the morning of August 10, 1972, James Lampros and his wife, Christine Lampros, were in their place of business in Fayetteville. The defendant, Jeremiah Lock (previously known to Mr. Lampros as "Jerry") and three other men entered the store together, stayed a few minutes and left together. Within five to eight minutes, the defendant, Pop Kelly, and Leonard Carter entered the store. "Joseph Hurley remained outside as a lookout." Immediately after the three named entered the store, Pop Kelly drew a pistol and shot Christine Lampros, killing her instantly. He also shot James Lampros inflicting serious wounds.

Mr. Lampros testified that he knew the defendant as "Jerry" having seen him in the store many times. After Mr. Lampros sufficiently recovered from his wounds to be interrogated, he gave the officers a detailed description of Jerry. Thereafter, Officer Newsome showed the witness ten photographs of persons of the defendant's race, age group, and characteristics fitting in a general way the description Mr. Lampros gave of Jerry. Mr. Lampros immediately identified the photograph of the defendant, Jeremiah Lock, whom he had known as "Jerry."

After defense counsel challenged the admissibility of Mr. Lampros' identification, the court conducted a voir dire at which Mr. Lampros testified that prior to August 10, 1972, he had seen Jerry in the store perhaps as many as eighty times. While he identified the photographs, he did so on the basis of his having previously seen and known the defendant. At the end of the voir dire the court found the in-court identification was in no way influenced by the photographs and permitted the witness to identify the defendant before the jury.

When Sergeant Banks of the Fayetteville Police Department was called to testify he stated that he had interviewed the defendant who had made admissions concerning the offenses charged. Before permitting the officer to testify, the court conducted a further voir dire. Sergeant Banks testified that before the beginning of his interrogation he gave the defendant full and complete warnings and cautions and advised him fully of

his rights as detailed in state and Federal cases. Defendant stated that he understood them and freely and voluntarily made admissions of his participation. At that time the admissions were reduced to writing by Sergeant Banks and given to the defendant who examined, approved, and signed the writing which, among other things, contained the following:

"1. That I have the right to remain silent and not make any statement at all, nor incriminate myself in any manner whatsoever.

"2. That anything I say can and will be used against me in a court or courts of law for the offense or offenses concerning which this statement is herein made.

"3. That I can hire a lawyer of my own choice to be present and advise me before and during this statement.

"4. That if I am unable to hire a lawyer I can request and receive appointment of a lawyer by the proper authority, without cost or charge to me, to be present and advise me before and during this statement.

"5. That I can refuse to answer any questions or stop giving this statement any time I want to.

"6. That no law enforcement officer can prompt me what to say in this statement, nor write it out for me unless I choose for him to do so.

"A. No one denied me any of my rights, threatened or mistreated me, either by word or act, to force me to make known the facts in this statement. No one gave, offered or promised me anything whatsoever to make known the facts in this statement, which I give voluntarily of my own free will and accord.

"B. I do not want to talk to a lawyer before or during the time I give the following true facts, and I knowingly and purposely waive my right to the advice and presence of a lawyer before and during this statement.

"C. I certify that no attempt was made by any law enforcement officer to prompt me what to say, nor was I refused any request that the statement be stopped, nor at any time during this statement did I request for the presence or advice of a lawyer."

Officer Banks further testified:

"The defendant read this and signed it and then made an oral statement. He told me that he, Leonard Carter, Joseph Hurley and Malcolm McDonald, alias Pop Kelly, were together in Cross Creek Court, on the evening of this incident. That they had decided to commit a robbery. That the four people were together, this defendant, Leonard Carter, Joseph Hurley and Pop Kelly, his real name being Malcolm McDonald.

"That they went into a store, the four of them and made, or two of them made, a purchase. That they left then and went outside of the store and remained for a few minutes. That during the course of being outside, one, or two people, including an automobile, drove up to the place. After the people had left, the three of them went back inside the store, this defendant, Malcolm McDonald, Pop Kelly and Leonard Carter. When they got in the store, this defendant told me that Malcolm McDonald or Pop Kelly was the one who did the shooting, that he shot Mr. Lampros; that he also shot Mrs. Lampros, the wife, who was standing at the cash register. He reached over across, this defendant said that he reached over across the counter and opened the cash register and removed the bills. That the three of them then left, running back from whence they had come, over to King Street, back to Cross Creek Court. That Joseph Hurley remained outside as a lookout. That they went back to, I believe it was 147 Cross Creek Court, where they divided the money. That he gave Malcolm McDonald or Pop Kelly fifteen dollars, he gave Leonard Carter fifteen dollars and when Pop Kelly came in he gave him fifteen dollars. He said he kept sixteen for himself. That after this they split and that he went to his girl friend's house."

The defendant on the voir dire stated he was nineteen years of age and had gone to the tenth grade in school. He admitted he signed the statement written by Officer Banks, but he gave the following explanation:

"The only reason I made any statement was that the officer kept messing with me, kicking the chair and desk and getting overruly and told me he didn't have all night to fool with me. I was afraid he was going to grab me and I got tired of him you know scarring me up and made the statement."

At the end of the voir dire the court found the statements made by the defendant to Officer Banks were freely and voluntarily made after the defendant had been fully advised as to his rights and had specifically stated that he did not desire the presence or advice of counsel. The court concluded the confessions were freely and voluntarily made by the defendant after having been fully advised of his options and rights. The court, over objection, permitted the State to offer the admissions in evidence before the jury.

The defendant elected not to testify nor to offer evidence before the jury.

After deliberating, the jury returned verdicts: (1) Guilty of murder in the first degree in the killing of Mrs. Lampros; (2) guilty of armed robbery; and (3) guilty of assault with a deadly weapon on James Lampros. The court ordered a poll of the jury at the defendant's request. One of the jurors when questioned as to her verdict of guilty answered, "Yes, according to the law." The court, however, ordered a repoll at which the juror gave the answers of guilty and signified that she still assented thereto. The court then accepted the verdicts and had them recorded in the minutes of the court. The court imposed a sentence of life imprisonment on the murder charge; thirty years on the armed robbery charge to begin at the expiration of the life sentence; and five years on the assault with a deadly weapon charge to begin at the expiration of the sentence for armed robbery. The defendant excepted and appealed.

*Robert Morgan, Attorney General, by Ralf F. Haskell, Associate Attorney, for the State.*

*John G. Shaw for the defendant.*

HIGGINS, Justice.

The defendant, by exceptive assignments supported by discussion in the brief and by oral argument, contends the court committed six prejudicial errors of law: (1) By admitting the evidence of James Lampros identifying the defendant as one of the persons who entered the store and committed the offenses charged; (2) by permitting Officer Banks to testify that the defendant made the oral admissions and signed the written confession introduced in evidence by the State; (3) and (4) by overruling defendant's motion to dismiss at the close of the

State's evidence and renewed after the defense rested without offering evidence; (5) by charging the jury with respect to the taking of $61.00 as an element of the robbery; and (6) by accepting the verdict.

Mr. Lampros, a witness for the State, testified that on August 10, 1972, the defendant and three other males entered the shop operated by him and his wife, Christine Lampros. They remained for a few minutes, made two small purchases, and then left together. They returned in about five minutes. One of the men drew a pistol and began shooting, killing Mrs. Lampros and severely wounding Mr. Lampros. Mr. Lampros testified that he had seen one of the parties many times. He knew his name as "Jerry" but did not know his last name. He gave the officers a detailed description of Jerry, his race, age group, and "characteristics." In order to further identify Jerry the officers selected the unmarked photographs of ten males of similar race, age, and characteristics of Jerry as described by the witness. The witness immediately identified the photograph of the defendant and recognized it as a photograph of Jerry.

[1] The foregoing was developed in the evidence on the voir dire at the conclusion of which the court concluded that the use of the photographs was not prejudicially suggestive and permitted the witness to identify the defendant before the jury as one of the robbers. The trial court found the identification of the defendant by Mr. Lampros was independent of and not influenced by the view of the photographs. The finding was suported by the evidence and was conclusive on appeal. *Simmons v. U.S.*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968); *Stovall v. Denno*, 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967 (1967); *State v. McPherson*, 276 N.C. 482, 172 S.E. 2d 50, and cases cited therein.

[2] When the State sought to introduce the defendant's in-custody confession, objection precipitated another voir dire. Officer Banks testified he gave the defendant the warnings and cautions, specifically stating them, which have been held by the United States and the state courts a prerequisite to their introduction in evidence. The defendant signed the written waiver of counsel, freely recited the details of the robbery and the shooting of both Mr. and Mrs. Lampros, the taking of the money from the cash register, and the division among the participants whom the defendant named.

The defendant testified on the voir dire admitting making the confession and signing the written report of it. However, he testified, "I was afraid he was going to grab me and I got tired of him you know scarring me up and made the statement."

The testimony of Officer Banks, corroborated by the defendant's signed statement, was sufficient to support the court's findings that the admissions were free and voluntary and admissible in evidence. Of course, the defendant contended the writing was signed involuntarily. The conflicting evidence required decision by the trial judge. *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845; *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610; *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885; *State v. Wright,* 275 N.C. 242, 166 S.E. 2d 681; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *Miranda v. Ariz.,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). The objections to the admission of evidence and to its sufficiency to go to the jury are not sustained. *State v. Roseman,* 279 N.C. 573, 184 S.E. 2d 289; *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431. Hence Assignments of Error Nos. 3 and 4 are not sustained.

[3] The defendant contends the court committed error in the charge by referring to the taking and carrying away of money as an element of the robbery. The reason assigned is, "[T]here was no evidence of this taking." The robbery indictment charged the taking and carrying away of $61.00. The defendant's confession disclosed that he, or one of his companions, took the bills from the cash register and thereafter, he and his companions divided the money taken from the cash register. The amount of money involved in an armed robbery is immaterial. The attempt to rob with a dangerous weapon is a felony. In common law robbery a taking is necessary, but in armed robbery either the taking or the attempt to take will support a verdict under G.S. 14-87. *State v. Owens,* 277 N.C. 459, 178 S.E. 2d 226; *State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496. The defendant's objection to the charge is not sustained.

[4] The defendant challenged the validity of the verdicts on the ground that one juror on the poll reported her findings that the defendant was guilty of murder in the first degree "according to the law." The court instructed the clerk to repeat the poll at which the juror repeated that her verdict was guilty of murder in the first degree and that she still assented thereto. The verdict of the jury was then received by the court and recorded

in its minutes. The foregoing, with respect to the verdict, was a full compliance with the requirements of the law. *State v. Best,* 280 N.C. 413, 186 S.E. 2d 1; *State v. Sanders,* 280 N.C. 81, 185 S.E. 2d 158; *Davis v. State,* 273 N.C. 533, 160 S.E. 2d 697. The objection to the verdict on the murder charge is not sustained.

[5]   This Court has examined and found without merit all of defendant's assignments of error. Nevertheless, this Court, especially in cases involving grave consequences, carefully examines the record of the cases on appeal and *ex mero motu* notes all legal defects appearing thereon. Examination of the indictments, the verdicts (in the light of the court's charge) and the judgments discloses that the defendant was convicted of murder in the first degree in Case No. 72 CR 23379 on the ground the killing of Mrs. Lampros therein charged was committed in the course of the armed robbery charged in Case No. 72 CR 23381. The conviction on the armed robbery charge, treated by the State as an element in the charge of murder in the first degree, cannot be sustained. In *State v. Carroll,* 282 N.C. 326, 193 S.E. 2d 85, this Court disposed of a similar case in this manner:

> "It appears conclusively that the armed robbery charges were proved as essential elements in the capital offense of murder in the first degree upon which the defendants were convicted. The robberies, therefore, became a part of and were merged into the murder charges. Having been so used, the defendants cannot again be charged, convicted and sentenced for these elements although the robberies constituted crimes within themselves. The following is quoted from *State v. Peele,* 281 N.C. 253, 188 S.E. 2d 326:
>
> " 'Examination of the indictments, verdicts, and judgments discloses that the armed robbery charge was embraced in and made a part of the charge of murder in the first degree. Wharton's Criminal Law and Procedure, Vol. 1, Section 148, states the rule: "It is generally agreed that if a person is tried for a greater offense, he cannot be tried thereafter for a lesser offense necessarily involved in, and a part of, the greater, . . . " Many cases recognize and apply the same principle. Among them are *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666; *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892; *State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496; *State v. Birckhead,* 256 N.C. 494, 128 S.E. 2d 838; and *State v. Bell,* 205 N.C. 225, 171 S.E. 50.' "

On the charge of armed robbery the verdict is set aside and the judgment vacated. On the charges of murder in the first degree of Mrs. Lampros and the assault with a deadly weapon on Mr. Lampros, we find no error.

In No. 72 CR 23379—No ERROR.

In No. 72 CR 23380—No ERROR.

In No. 72 CR 23381—VERDICT SET ASIDE; JUDGMENT VACATED.