STATE OF NORTH CAROLINA v. WAYNE R. TUGGLE

No. 100

(Filed 25 Januuary 1974)

1. **Constitutional Law § 32; Criminal Law § 66— photographic identification — no right to counsel**

    Defendant had no constitutional right to the presence of counsel when robbery victims were viewing photographs for purposes of identification regardless of whether defendant was in custody or at liberty at that time.

2. **Criminal Law § 66— pretrial photographic identification**

    Circumstances surrounding photographic identification of defendant by robbery and kidnapping victims were not impermissibly suggestive and conducive to irreparable mistaken identity, and the photographic identifications did not taint the victims' in-court identifications of defendant, where the identifications occurred on the same night as the crimes, both victims had seen the uncovered face of defendant in a brightly lighted store, the distance between them and defendant was the length of a shotgun barrel, both victims looked separately at photographs shown them and identified the same photograph, and both victims thereafter identified two other photographs of defendant as the perpetrator of the crimes.

**3. Criminal Law § 66— in-court identification — necessity for voir dire**

When the admissibility of in-court identification testimony is challenged on the ground it is tainted by out-of-court identifications made under constitutionally impermissible circumstances, the trial judge must make findings of fact to determine whether the proffered testimony meets the tests of admissibility; when the facts so found are supported by competent evidence, they are conclusive on appellate courts.

**4. Criminal Law § 66— identification testimony — observation at crime scene**

In a prosecution for robbery of a grocery store, the evidence on *voir dire* supports the trial court's finding that identification of defendant by the manager of a nearby store as the person who robbed her store a short time before the robbery in question was based solely on her observation of defendant during the robbery in her store.

**5. Criminal Law §§ 34, 66— armed robbery — evidence of robbery of nearby store — admissibility on question of identity**

In a prosecution for armed robbery of a grocery store, testimony by the manager of another store located some three and a half miles from the grocery store that her store was robbed by defendant some 30 minutes before the grocery store robbery and that similar methods were used was properly admitted for consideration by the jury on the question of identity.

APPEAL by defendant from *Collier, J.,* 25 June 1973 Session of FORSYTH Superior Court.

In separate bills defendant was charged with (1) kidnapping Billy Joe Kiser (Kiser), (2) armed robbery of Kiser, taking from his presence and custody $450.00 of the money of Roger L. Moorefield, t/a Moorefield's Grocery, and (3) armed robbery of G. B. Smith (Smith). Upon arraignment, defendant pleaded not guilty in each case. The three indictments were consolidated for trial.

The State offered evidence tending to show the facts narrated below.

On 20 November 1972 about 7:15 p.m. defendant walked into Moorefield's Grocery Store with a shotgun. Addressing Kiser, the store manager, and Smith, a customer, defendant said, "This is a holdup." Defendant stuck the gun in Smith's stomach and shoved him back into the room. Defendant then turned the gun on Kiser, hit him in the stomach and knocked him against a cigarette rack. In compliance with defendant's orders, Smith removed from his wallet and laid upon the counter

State v. Tuggle

approximately $450.00 in bills; and Kiser put Smith's bills and approximately $465.00 in bills he removed from the store's cash register in a paper bag which defendant provided for that purpose.

After taking the money, defendant held the shotgun on Kiser and Smith and ordered them out of the store. A station wagon in defendant's possession was parked in back of the store. Kiser was ordered to get in it and drive as directed by defendant. Smith was ordered to drive his own car and to stay right in front of the station wagon. The vehicles started out as directed "up North Main or Three Eleven Highway." Upon reaching the next filling station, Smith pulled off, stopped and called the sheriff's office. Kiser, as ordered by defendant, made a left turn from Highway #311 and stopped at a point approximately three to three and a half miles from Moorefield's store. Defendant then let Kiser go and "took off towards Davidson County." Kiser had been in defendant's presence for approximately fifteen minutes. When defendant drove away in the station wagon, Kiser went back to the Moorefield store. A deputy sheriff was there to whom Kiser gave a description of defendant.

Kiser testified: "The reason I gave him the money was because of the shotgun."

Smith testified: "I gave him the money because he had a gun in my stomach and demanded it."

Kiser further testified that he went with defendant "against [his] will"; that, when he was driving the station wagon, defendant was pointing the shotgun "[s]ometimes in the side of [his] head and sometimes in [his] ribs."

The inside of the store was well lighted with large fluorescent lights, and there were lights outside under the shed where gasoline was sold. Kiser and Smith were as close to defendant as the length of the gun barrel. Defendant had nothing over his face. Kiser and Smith noticed particularly defendant's facial features and expression. Each identified defendant unequivocally as the man who committed the alleged crimes.

The Kiser family lived upstairs over the store. From her bedroom window, Kiser's daughter, Mendy, saw a man holding a shotgun on her father and carrying him to the back of the store. She identified defendant as that man.

Between eight and eight-thirty Kiser went from the Moore-field store to a drugstore to "get something for [his] nerves." In response to a call, Kiser drove to the High Point police station and arrived there about 9:00 or 9:15 p.m. Smith arrived later. Both identified certain photographs of defendant as pictures of the man who had robbed them and kidnapped Kiser. Smith saw defendant that night while walking past a room in which defendant was seated. He recognized him as the man who had committed the robberies and kidnapping.

The station wagon used by defendant belonged to Mrs. Doris West, defendant's mother-in-law. Mrs. West lived in Thomasville. Defendant did not have permission to use it. Mrs. West had reported to the Thomasville Police Department that her station wagon had been stolen. This information was communicated to the High Point Police Department. The station wagon, a 1967 Mercury, when found in Thomasville, had in it, *inter alia,* "a single barrel shotgun," which Richard Lerner West, defendant's father-in-law, identified as belonging to his son Ricky and which was missing from the West home.

Being advised that defendant was planning to leave for Florida, the Greensboro police were notified and requested to check the bus station in Greensboro in an effort to locate and apprehend defendant. When arrested at the bus station in Greensboro defendant had with him $740.00 in cash and a bus ticket to Fort Lauderdale, Florida.

Defendant testified that he did not kidnap or rob anybody; that he had never seen any of the persons who identified him as the man who committed the alleged crimes; that his mother-in-law knew he had the station wagon; that Mr. West had asked him to go with Ricky to pick up Ricky's check; that he was mad with his mother-in-law because of her interference with his effort to get his wife to go back to Florida with him; and that the money he had with him when arrested was money he had been saving over a period of months.

Additional evidence will be set forth in the opinion, including the testimony of Mrs. Georgia Hicks, a State's witness, relating to a robbery of Stragley's Flash Market in High Point about 6:45 p.m. on 20 November 1972.

In each of the three cases, the jury returned a verdict of guilty as charged. The court consolidated the three cases for

judgment. A single judgment, which imposed a sentence of life imprisonment, was pronounced.

Defendant excepted, appealed and assigns as error the admission over his objection (1) of the identification testimony of Kiser and Smith, and (2) the testimony of Mrs. Hicks relating to the robbery of Stragley's Flash Market.

On 21 November 1973 this Court allowed defendant's motion to have his appeal in the robbery cases heard by the Supreme Court without prior determination in the Court of Appeals.

*Attorney General Robert Morgan and Associate Attorney Thomas M. Ringer, Jr., for the State.*

*H. Glenn Davis for defendant appellant.*

BOBBITT, Chief Justice.

Defendant's first and second assignments of error relate to the admission over his objection of the identification testimony of Kiser and Smith. He contends their testimony was tainted by impermissible pre-trial identification procedures and should have been excluded.

Before admitting the challenged testimony, the court conducted a *voir dire* hearing. Evidential facts and the court's findings will be set forth below.

[1] Defendant contends the in-court identification testimony of Kiser and of Smith was tainted because defendant was not represented by counsel when Kiser and Smith identified certain photographs of defendant as pictures of the man who committed the alleged crimes. There is no merit in this contention. Defendant had no constitutional right to the presence of counsel when Kiser and Smith were viewing photographs for purposes of identification regardless of whether defendant was in custody or at liberty at that time. *State v. Stepney*, 280 N.C. 306, 313, 185 S.E. 2d 844, 849 (1972), and cases there cited.

[2] Defendant further contends the in-court identification testimony of Kiser and of Smith was tainted because the circumstances surrounding the photographic identifications were impermissibly suggestive and conducive to irreparable mistaken identity. The evidence before the court on *voir dire* negates this contention. A brief summary will suffice.

The only pre-trial identifications by Kiser and by Smith were those made at the police station in High Point on the same night the robberies and kidnapping occurred. Kiser and Smith had recently seen the uncovered face of defendant in the brightly lighted store. The distance between them and defendant was the length of the shotgun barrel. Kiser arrived at the police station about 9:15. He looked through the photographs shown him and identified one as the picture of the man who had committed the alleged crimes. Smith did not arrive until about 11:00 p.m. He looked through the photographs shown him and identified the same photograph as the picture of the man who had committed the alleged crimes. Thereafter, both Kiser and Smith identified two other photographs of defendant as pictures of the man who committed the alleged crimes. Kiser testified: "I won't never forget that face." Smith referred to defendant's "very distinctive face" and identified him "without the slightest shadow of a doubt."

Defendant was not brought before Kiser or Smith in a lineup or otherwise. Kiser did not see defendant at the police station. Following his identification of defendant's photograph, Smith saw defendant momentarily under the following circumstances: Going down the hall on his way out of the police station, Smith passed a room (office) in which "half a dozen" people were seated. Looking back over his shoulder he recognized defendant as one of the persons seated in that room. It had been suggested that he look in this room as he passed.

[3] When the admissibility of in-court identification testimony is challenged on the ground it is tainted by out-of-court identification(s) made under constitutionally impermissible circumstances, the trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility. When the facts so found are supported by competent evidence, they are conclusive on appellate courts. *State v. McVay* and *State v. Simmons*, 277 N.C. 410, 417, 177 S.E. 2d 874, 878 (1970); *State v. McVay* and *State v. Simmons*, 279 N.C. 428, 432, 183 S.E. 2d 652, 655 (1971); *State v. Morris*, 279 N.C. 477, 481, 183 S.E. 2d 634, 637 (1971).

The court's findings, which are supported by plenary uncontradicted testimony, are to the effect that the "in-court identification of the defendant" by Kiser and Smith was based on their observations of defendant on 20 November 1972 and that the testimony of each "[had] its origin independent of any in-

court, in-custody, or photographic viewing of the defendant by the witness." Defendant's objections to the in-court identification testimony of Kiser and of Smith were properly overruled.

Defendant's third (last) assignment of error relates to the admission over his objection of the testimony of Mrs. Georgia Hicks, the manager of Stragley's Flash Market, a store in High Point some three to three and a half miles from Moorefield's Grocery.

Mrs. Hicks testified in substance that on 20 November 1972 about 6:45 p.m. defendant entered the door of the Flash Market with a "[t]welve-gauge, single barrel shotgun" in front of him and demanded Mrs. Hicks's money. She removed all bills from the cash register and put them upon a counter. In response to defendant's further demands, Mrs. Hicks got a brown paper bag and she and defendant put the bills in it. Defendant ordered Mrs. Hicks to the back of the store, took the bag and left. Some two minutes later Mrs. Hicks closed the store and went to the High Point police station. There she looked through photographs shown her and identified a photograph of defendant as the picture of the man who had just robbed the Flash Market.

[4] Before admitting the in-court identification testimony of Mrs. Georgia Hicks to the effect that defendant was the man who robbed the Flash Market, the court conducted a *voir dire* hearing at which the only evidence was the testimony of Mrs. Hicks. On *voir dire,* Mrs. Hicks testified, *inter alia,* that defendant got as close to her as "[t]he length of that shotgun barrel" and that the Flash Market was lighted with twelve "[n]inety-six inch fluorescents." Suffice to say, plenary uncontradicted evidence supports the court's finding that Mrs. Hicks's in-court identification was based solely on her observation of defendant in the Flash Market on 20 November 1972.

[5] There remains for consideration defendant's contention that Mrs. Hicks's testimony concerning a robbery at the Flash Market should have been excluded on the ground it tended to show defendant had committed an unrelated criminal offense.

The evidence as to *what happened* when Kiser and Smith were robbed and Kiser was kidnapped was not contradicted. The primary issue was whether *defendant* committed these crimes. We note that the court gave explicit instructions that the jurors were to consider the testimony of Mrs. Hicks only as it might tend to bear upon the identity of the defendant as the person

who committed the crimes for which he was on trial and for no other purpose.

Although in different counties, the distance from the Flash Market to Moorefield's Grocery was three and a half miles or less. The interval between the robbery at the Flash Market and the robberies at Moorefield's Grocery was brief. Both were committed hurriedly by an unmasked man. In each, the mode of procedure was the same, that is, abrupt entrance into a lighted store with a shotgun pointed toward the occupant(s) and an immediate demand for the money. Proximity in place and time and similarities in method were relevant for consideration by the jury as to whether the man identified by her as defendant and who had robbed the Flash Market was also the man who had committed the crimes for which defendant was on trial. We hold that the testimony of Mrs. Georgia Hicks was competent on the question of identity and properly admitted. *State v. McClain*, 282 N.C. 357, 362-63, 193 S.E. 2d 108, 111-12 (1972), and cases there cited.

Defendant having failed to show prejudicial error, the verdicts and judgment will not be disturbed.

No error.