239 S.E.2d 254 (1977)
293 N.C. 772
STATE of North Carolina
v.
Brownie Lee McKEITHAN.
No. 49.
Supreme Court of North Carolina.
December 15, 1977.
*257 Rufus L. Edmisten, Atty. Gen., Thomas B. Wood, Asst. Atty. Gen., Raleigh, for the State.
Jerry B. Clayton, Robert W. Myrick, Kenneth B. Oettinger, Durham, for defendant appellant.
HUSKINS, Justice:
Defendant contends his in-court identification by the witness Lawrence Rogers was based on unnecessarily suggestive pretrial identification procedures which violated due process. He therefore argues that the identification testimony of this witness was erroneously admitted. This constitutes his first assignment of error.
A voir dire was conducted at the first trial to determine whether defendant's in-court identification was tainted by prior photographic identification procedures. The testimony of Lawrence Rogers on voir dire tends to show that the 7-Eleven Store on Highway 54 on the night in question was well lighted with overhead fluorescent lights and that the parking lot was well lighted with floodlights; that Rogers was in the presence of the robber, both inside and outside the store building, for a total of fifteen to twenty minutes; that he was very close to the robber and had ample opportunity to observe him while the crimes were being committed; that the robber was wearing no mask or other disguise; that Rogers observed the robber closely and gave the officers a detailed description of him.
Mr. Rogers further testified on voir dire that five hours after the robbery, Officer Wilkerson showed him a number of photographs and he told the officer the robber's picture was not among them. On two other occasions, numerous photographs in groups were shown to the witness and on each occasion he informed the officer that the robber's picture was not among them. On one occasion he went to the Durham Police Department to view suspects singly and informed the officers none of those men was the man who committed the robbery and killed Mr. Hedrick. On another occasion Mr. Rogers went to the police department and viewed literally hundreds of photographs and told the officers he had not seen the photograph of the man who committed the robbery and murder here in question. Finally, on 6 November 1975, Officer Wilkerson carried ten photographs of black males of about the same age to Mr. Rogers' home, laid them out on the table, numbered them from one to ten, then brought Mr. Rogers into the room and asked him to examine them. Mr. Rogers testified: "I viewed it, I would say, at least *258 a minutethirty seconds or somewhere like that. I did immediately identify him as I looked over those photographs as the man who had robbed me and shot Mr. Hedrick. There is no doubt in my mind now or then. That is the man that killed him sitting over there on the other side of Mr. Jerry Clayton near the end of that table," referring to defendant.
Defendant offered no evidence on voir dire.
Judge Lee made findings of fact substantially in accord with the testimony of Lawrence Rogers and, based thereon, concluded that no illegal identification procedures were used or suggestions made which would taint the identification of defendant. The court further concluded that the in-court identification of defendant by Lawrence Rogers was of independent origin based solely on what the witness saw at the time of the crimes and did not result from any out-of-court photographic identification or any other pretrial identification procedure suggestive or conducive to mistaken identification. Judge McKinnon adopted these findings and conclusions at this, the second, trial.
"The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice. . . ." State v. Henderson, 285 N.C. 1, 203 S.E.2d 1016 (1974). Here, the totality of the circumstances indicates that the identification of defendant by Lawrence Rogers was not based on suggestive procedures likely to lead to misidentification. Hence no violation of due process occurred.
Where, as here, the findings and conclusions of the trial court on voir dire are supported by competent evidence, they are conclusive on appeal and must be upheld. State v. Tuggle, 284 N.C. 515, 201 S.E.2d 884 (1974); State v. Morris, 279 N.C. 477, 183 S.E.2d 634 (1971); State v. Gray, 268 N.C. 69, 150 S.E.2d 1 (1966).
In the factual context of this case, our holding is supported by many decisions both state and federal, including Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States v. Zeiler, 447 F.2d 993 (3d Cir. 1971); State v. Shore, 285 N.C. 328, 204 S.E.2d 682 (1974); State v. Tuggle, supra; State v. Lock, 284 N.C. 182, 200 S.E.2d 49 (1973); State v. Knight, 282 N.C. 220, 192 S.E.2d 283 (1972).
Defendant's in-court identification by Lawrence Rogers was properly admitted. His first assignment of error is overruled.
In his redirect examination of Officer Wilkerson, the district attorney asked the witness if the officers were looking for an accomplice named Claudie Cheek who was allegedly driving the get-away car the night of the robbery and murder. Over objection Officer Wilkerson replied in the affirmative. In his closing argument, again over objection, the district attorney argued to the jury that defendant had an accomplice, namely Claudie Cheek, who transported defendant to and from the 7-Eleven Store but remained outside during the robbery and murder. Defendant's timely motions for mistrial due to admission of the challenged evidence and jury argument were overruled. His second assignment of error is based thereon.
The record shows that defendant's cross-examination of Officer Wilkerson consisted, in part, of sustained inquiries concerning Claudie Cheek. These inquiries elicited responses that Cheek was a "prime suspect" in the crime and had been charged with the "identical" crime as that for which defendant was on trial. Defendant's counsel then showed the witness "the bills of indictment of Claudie Cheek, charging him with the same identical crimes in the same identical language as the bills of indictment for defendant." Under such circumstances, defendant may not complain when the district attorney, on redirect examination, inquires as to whether Cheek was being sought as an accomplice to the robbery and murder. "[I]f on cross-examination evidence *259 is developed without objection, the adverse party can offer evidence in reply relating to the same questions, even though such evidence in reply might have been incompetent in the first instance." Willis v. New Bern, 191 N.C. 507, 514, 132 S.E. 286, 289 (1926). It has been suggested that the rule stated above should be subject to some limitations and that exercise of the trial court's discretion is frequently necessary. McCormick, Evidence § 57, pp. 131-33 (2d ed. 1972). In the present case, however, we think the subject of the district attorney's redirect examination was entirely proper. Having so held, it is unnecessary to consider defendant's arguments concerning the general question of the admissibility of evidence tending to show the guilt of one other than the accused. The district attorney's jury argument constituted a legitimate exercise of his right to argue the facts in evidence and all legitimate inferences derived therefrom. Defendant's second assignment of error is overruled.
The witness Larry Ravon Fleming testified on direct examination that when he was picked up following the Parkwood robbery and murder, the district attorney questioned him not only about Parkwood but also about the Chesterfield Motel robbery, the Wamble's robbery, "and several more armed robberies." Fleming swore that he had not been involved in any of those robberies, had no knowledge of them, and that he told the district attorney so.
The district attorney was permitted, over objection, to cross-examine Fleming concerning the responses he gave in October 1975 to questions about his knowledge of and participation in various armed robberies immediately preceding the Parkwood robbery and murder, the State contending his earlier responses were inconsistent with his testimony on direct examination. The ruling of the court permitting such cross-examination constitutes defendant's third assignment of error.
Defendant relies on the general rule that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent or separate offense, citing State v. McClain, 282 N.C. 357, 193 S.E.2d 108 (1972), and State v. Hunter, 290 N.C. 556, 227 S.E.2d 535 (1976). The rule enunciated and applied in those cases has no application to the facts of this case. Here, the witness Fleming is not the accused and the State's cross-examination of him was not designed, and did not tend, to show that defendant McKeithan had committed other separate crimes. Rather, the challenged cross-examination attacked Fleming's credibility and was designed to impeach his testimony on direct examination.
For impeachment purposes a witness may ordinarily be cross-examined concerning statements he has made on other occasions which are inconsistent with his testimony at the present trial. 1 Stansbury's North Carolina Evidence § 46 (Brandis rev. 1973). Both the State and the defendant have a right to cross-examine a witness to show his interest or bias, State v. Wilson, 269 N.C. 297, 152 S.E.2d 223 (1967), and questions which challenge the credibility of a witness are competent. State v. Hart, 239 N.C. 709, 80 S.E.2d 901 (1954). For purposes of impeachment prior inconsistent statements of a witness are always admissible. State v. Penley, 277 N.C. 704, 178 S.E.2d 490 (1971). See 1 Stansbury's North Carolina Evidence § 46 (Brandis rev. 1973). Moreover, "cross-examination is not confined to matters brought out on the direct examination, but questions are permissible to impeach, diminish or impair the credit of the witness. These questions often take a wide range, but should be confined to questions within the bounds of reasonthe materiality is largely left to the discretion of the court." State v. Dickerson, 189 N.C. 327, 332, 127 S.E. 256, 259 (1925). Defendant's third assignment of error is overruled.
After careful examination of the entire record we conclude that defendant has had a fair trial free from prejudicial error. The verdicts and judgments must therefore be upheld.
NO ERROR.