STATE OF NORTH CAROLINA v. JAMES RALPH WHITEHEAD

No. 757SC149

(Filed 7 May 1975)

**Criminal Law § 66— identification of defendant — viewing in hospital room**
    In a prosecution for armed robbery and felonious assault with a
    firearm inflicting serious injury the trial court properly determined
    that the robbery victim's in-court identification of defendant was based
    on her observation at the scene of the crime and not on a viewing
    of defendant in a hospital room.

APPEAL by defendant from *Peel, Judge.* Judgment entered
4 October 1974 in Superior Court, NASH County. Heard in the
Court of Appeals 17 April 1975.

Defendant was charged with armed robbery and felonious
assault with a firearm inflicting serious injury. He pleaded not
guilty but was found guilty as charged. The five assignments of
error which have been brought forward on this appeal challenge
the in-court identification of defendant by the prosecuting wit-
ness. Defendant contends that the identification was not of in-
dependent origin, as the court found, but the product of an
impermissibly suggestive procedure which permitted the prose-
cuting witness to see the defendant in his hospital room six days
after the robbery.

Facts necessary for the determination of this issue are set
forth in the opinion.

*Attorney General Edmisten, by Assistant Attorney General
James E. Magner, Jr., for the State.*

*Moore, Diedrick & Whitaker, by L. G. Diedrick, for the de-
fendant-appellant.*

BROCK, Chief Judge.

Mrs. Frances Avent was operating a combination service
station and grocery store on 3 June 1974. Defendant entered the
store that afternoon when no other customers were present. He
purchased some cigarettes and pretended to leave the store, but
whirled around and pulled out a pistol. As he took about $75.00
from the cash drawer, defendant directed Mrs. Avent to go into
a back room and close the door. He warned Mrs. Avent not to
follow him after he left. Mrs. Avent did as she was told and

waited for defendant to drive away, but did not hear a car start. She then went to the back door and saw defendant bicycling down the road. A neighbor in a nearby garden was called for help, and the sheriff's department was notified. Then Mrs. Avent and the neighbor got into the neighbor's car and pursued the robber. They soon caught up with him and continued past him. Knowing that he had a gun, Mrs. Avent hid so that she could not be seen. She and her neighbor stopped the car somewhat further down the road and observed the defendant pedal to the Watson Seed Farm, where he dismounted and disappeared into the woods. Another neighbor arrived and fired a shot into the trees in an attempt to halt the defendant. A deputy sheriff of the Nash County Sheriff's Department soon arrived and followed the defendant through the woods. Quarters, nickels, and pennies were strewn along the path the defendant had taken. Another deputy, J. E. Doughtie, went to the Thomas home on the other side of the woods. After being invited inside the house, Doughtie began searching the rooms. Most of the rooms were well lighted, but one room was dark. Doughtie took out his flashlight and shined it into the room. He heard a noise, and defendant charged out, holding a gun in his right hand. Several shots were fired, and Doughtie was hit in the ear and in the chest. Doughtie managed to fire his revolver at the defendant, hitting him twice. Thomas Earl Whitehead, the defendant's cousin, emerged from the room and surrendered. A later search uncovered a .25 caliber pistol and $44.08 under a blanket. Thomas Whitehead had $34.00 on his person.

Thomas Whitehead testified that he first planned to rob Mrs. Avent but did not go through with it. When he told defendant he had failed, defendant took the .25 caliber pistol and peddaled away on a bicycle. He returned shortly, pursued by two cars and a man who fired a shot into the woods. Thomas and defendant divided the money and then went to their gandmother's house where defendant was apprehended.

Defendant testified that he sold some pills to someone and divided the proceeds with Thomas. As he returned home on a bicycle, he was pursued by a car and a man who shot at him. When he got to his grandmother's house, he was told that Doughtie had been looking for him. He hid when Doughtie returned to the house and fired only after Doughtie had fired at him first.

The trial court found as a fact that Mrs. Avent had had no difficulty seeing defendant at the time of the robbery. She had given an accurate description to the sheriff's department after the robbery. Although she did not know defendant's name,. she had seen him before. She later saw defendant at the hospital and recognized him immediately, although his hair appeared to be different. The court concluded that the identification was of independent origin and not the product of any highly suggestive procedure, despite the fact that at the time Mrs. Avent viewed the defendant, he was the only Negro in the hospital room.

The contention of defendant may be stated briefly: The discrepancies between the description given to the sheriff's department and the physical appearance of the defendat cast doubt on Mrs. Avent's ability to recognize the defendant. Had she not viewed him in the hospital room, defendant asserts that she could not have accurately described the person who robbed her store. In its finding of fact number two, the court dealt with this point:

"That immediately after the robbery she described the person who had robbed her to Mr. Gilliam as being a person of eighteen to nineteen years of age, although she stated that she is not able to estimate ages very well; that she described the clothes which he was wearing at the time, and she stated that he was approximately five feet nine inches tall and of slender build weighing approximately 155 to 160 pounds; that she was not able to call his name but that she knew that she had seen him before. The Court finds that this estimate insofar as it relates to a description of the defendant's person is reasonably accurate based on the Court's observation of the defendant here in court."

No exception was taken by defendant.

In *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed. 2d 1247, 1253 (1968), the Supreme Court stated that "each case must be considered on its own facts, and . . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Findings of fact as to whether the identification was the result of constitutionally impermissible circumstances are re-

quired. When those findings are supported by competent evidence, they are conclusive and binding on appellate courts. *State v. Woods,* 286 N.C. 612, 213 S.E. 2d 214 (1975), *citing State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634 (1971). It is our opinion that the findings of fact are clearly supported by the evidence.

No error.

Judges MORRIS and HEDRICK concur.