State v. Connally

---

STATE OF NORTH CAROLINA v. JOHN T. CONNALLY

No. 7717SC864

(Filed 18 April 1978)

1. **Criminal Law § 66.17 — unfair in-custody show-up — in-court identification based on observation at crime scene**

   Though an in-custody "one-man lineup" conducted without informing defendant of his right to have counsel present was unconstitutional, evidence

was sufficient to support the trial court's finding that an in-court identification of defendant was of independent origin and was not tainted by the illegal in-custody confrontation where such evidence tended to show that the witness observed defendant for about twenty minutes in a well lighted store, and she never identified as the perpetrator of the crime any of the other persons whose photographs were shown her by police.

2. **Criminal Law § 66.18 — unfair in-custody show-up — in-court identification — failure to hold voir dire — error**

The trial court erred in failing to conduct a voir dire hearing for the purpose of determining whether a witness's in-court identification of defendant should have been excluded because it was tainted by an unnecessarily suggestive in-custody confrontation where there was clear evidence of an unfair one-on-one in-custody confrontation; the witness's observation of defendant at the crime scene lasted for only a few minutes at a time when there were many other people around; the witness had no reason to pay particular attention to defendant; there was no evidence that the witness gave an accurate description of the perpetrator of the crime to anyone; and there was a time lapse of two months between the observation at the crime scene and the unfair "show-up" confrontation.

APPEAL by defendant from *Seay, Judge*. Judgment entered 27 May 1977 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 7 February 1978.

Defendant pled not guilty to charges of (1) breaking or entering Lawsonville Avenue School and (2) larceny of checks therefrom and (3) forgery of a check drawn on the School and (4) uttering said check at the Jewel Box in Reidsville, all on or about 9 April 1976. The jury returned verdicts of not guilty on the charges of breaking or entering and larceny, and guilty of forgery and uttering. Defendant appeals from judgment consolidating the charges and imposing imprisonment of four to six years.

The evidence for the State tended to show that on Friday night, 9 April 1976, Lawsonville Avenue School was broken into and several of the school's blank checks were stolen. Barbara Harris testified that during the afternoon of the following day (Saturday) she was in charge of the Jewel Box when defendant (identified by her after voir dire) asked to see a ring, gave her a check for $145.78 which she cashed, and accepted $10.00 to lay away the ring. A week or so later the check was returned as a forgery to the store, and Ms. Harris reported the incident to the Reidsville Police Department.

William T. Robinson was arrested and charged with the four crimes listed above in early May, 1976. He first denied that defendant was involved in the crimes. But in early June, 1976, he made a statement to officers implicating defendant, who was arrested. Robinson testified that he and defendant were together and acted in concert in the entry of the school on 9 April and larceny of the checks, and were together the following day when checks, forged by defendant, were uttered at the Jewel Box and at the nearby Bestway Store.

Defendant's evidence tended to show that he and his girl friend, Debbie Keen, were together at defendant's home in Caswell County with his mother and brothers on the night of 9 April 1976, and that on the following day she accompanied defendant on his route to Caswell, Person and Alamance Counties for the collection of insurance premiums, finishing about 1 or 2 o'clock in the afternoon. On that day they were never closer than 30 miles to Reidsville. Defendant's mother testified that defendant and Debbie Keen were at her home on Friday night, left together the next morning, and returned and stayed there Saturday afternoon. Several witnesses testified that they paid insurance premiums to defendant on the morning of 10 April. And several witnesses testified that defendant had a good reputation.

In rebuttal for the State, Brian Moody testified that on 10 April 1976 at about 7:00 p.m. defendant and Robinson together came to the Bestway Store in Reidsville and cashed a check.

*Attorney General Edmisten by Associate Attorney Christopher P. Brewer for the State.*

*Bethea, Robinson, Moore & Sands by Alexander P. Sands III for defendant appellant.*

CLARK, Judge.

First, the defendant challenges the admissibility of the eyewitness identification testimony of (1) the prosecuting witness Barbara Harris, and (2) Brian Moody, who was called as a witness for the State in rebuttal after defendant offered alibi evidence.

(1) *The Identification Testimony of Barbara Harris*

The identification testimony of Ms. Harris was admitted on *voir dire* along with the testimony of Ms. Harris and Officers

Huskey and Lambert, both of the Reidsville Police Department, which, in summary, tended to show the following:

> The lights in the store were bright; defendant was in the presence of Ms. Harris for about 20 minutes, and most of this time his face was two or three feet from hers. A week or so passed before the check was returned to the store by the bank with notice that it was forged. The matter was reported to the police, and Ms. Harris gave a description of the perpetrator. The police brought a group of several photographs to the store for inspection by Ms. Harris, but she did not find the photograph of the perpetrator among them. A week or so later (in early May) she went to court to view William Robinson, told officers Robinson was not the perpetrator, and she was asked to look at other photographs in an office. She did not find a photograph of the perpetrator among them, but as she was leaving she glanced down at a photograph on the desk, recognized it as the photograph of the perpetrator and so advised Officer Lambert. He testified that he did not recall a photographic identification by Ms. Harris. On 16 June Officer Lambert arrested defendant on information of William Robinson, an accomplice, and at the jail defendant was advised of his *Miranda* rights and he signed written waiver. On the following day Ms. Harris was requested to come to the police office. Defendant was told that the same rights he was told about the night before applied. Defendant said he understood. Defendant was asked if he minded if someone looked at him and he replied, "No, let anybody come, I didn't do anything." Defendant was not advised of his right to have counsel present for the "one-man lineup." Ms. Harris was brought to an office where she identified defendant, who was the only black in the office.

[1]  The defendant offered no evidence on *voir dire*. The trial court found facts, including defendant's consent to the "lineup," and concluded that Ms. Harris's courtroom identification of defendant was based on her observation of him in the store at the time of the crime and "not tainted by any out-of-court proceedings."

The in-custody identification conducted at or after the initiation of adversary judicial criminal proceedings when defendant

was not warned of his right to have counsel present during the confrontation is in violation of the Sixth Amendment. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178 (1967); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411 (1972). Before such criminal proceedings have been initiated Due Process protects the accused against the introduction of evidence of, or evidence tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968).

The *Wade* and *Gilbert* cases held that an in-court identification following an uncounseled lineup was allowable only if the prosecution could clearly and convincingly demonstrate that it was not tainted by the constitutional violation. Since these decisions, North Carolina has directed that the trial court conduct a *voir dire* hearing as soon as the identity issue is raised, and if it is determined that the in-custody confrontation is in violation of constitutional rights, then the in-court identification is admissible only if the hearing judge finds that by clear and convincing evidence the State has established that the in-court identification is of independent origin and thus not tainted by the illegal pretrial identification procedure. *State v. Wright*, 274 N.C. 84, 161 S.E. 2d 581 (1968), *cert. den.* 396 U.S. 934, 90 S.Ct. 275, 24 L.Ed. 2d 232 (1969); *State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353 (1968); *State v. Stamey*, 3 N.C. App. 200, 164 S.E. 2d 547 (1968), *retrial*, 6 N.C. App. 517, 170 S.E. 2d 497 (1969).

In *Simmons v. United States, supra*, a new rule was announced to deal with the admission of in-court identification testimony that the accused claimed had been fatally tainted by a previous suggestive confrontation, the court holding that due process was violated by in-court identification if the pretrial procedure had been "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *See State v. McKeithan*, 293 N.C. 772, 239 S.E. 2d 254 (1977).

In the case *sub judice* the trial judge ordered a *voir dire* hearing, found facts, and concluded that the in-court identification was of independent origin and not tainted by the illegal in-

custody confrontation. We confess to some confusion from the *voir dire* testimony of Ms. Harris that, about a month after the crime in question, she saw a single photograph on a desk in the police station and observed to Officer Lambert that it was a photograph of the perpetrator (defendant). However, Officer Lambert testified that he did not recall such photographic identification by Ms. Harris. Trial evidence established that Officer Lambert arrested defendant about a month after Ms. Harris's purported identification, the basis for the arrest being information furnished by co-perpetrator Robinson, not her identification. This somewhat bizarre twist does not negate her testimony relative to the excellent lighting conditions in the store, the perpetrator's closeness to her for a period of about 20 minutes and other evidence which gives her eyewitness identification reliability and fully supports the conclusion of the trial court that her in-court identification was not tainted by the unconstitutional in-custody "show-up" confrontation.

Since the findings and conclusions of the trial court are supported by competent evidence, they are conclusive on appeal and must be upheld. *State v. McKeithan, supra.*

(2) *The Identification Testimony of Brian Moody*

[2] The State's witness Brian Moody testified that he saw defendant and Robinson together in his Bestway Store in Reidsville about 7:00 p.m. on Saturday, 10 April 1976. The State offered this testimony in rebuttal after defendant had offered alibi evidence tending to show that he was not in Reidsville or even in Caldwell County on that day. Defendant aptly objected to the identification question and moved for a *voir dire.* The trial court denied the motion, but in the charge to the jury the court instructed that "This evidence was received solely for the purpose of showing the identity of the person who was present in Reidsville on April 10th, 1976, with Robinson."

This evidence related to a material feature of the case. Defendant relied on the defense of alibi. The evidence was offered in rebuttal to attack and negate this defense. The instructions of the trial court which attempted to limit the purpose of the evidence had no curative effect. We are unable to see that different rules or standards should be applied to the identification testimony of Ms. Harris and Brian Moody. Both witnesses were called to the police station on the same day for a "show-up" confrontation with the defendant which was unnecessarily suggestive and in violation of the Sixth and Fourteenth Amendments. The

State v. Connally

testimony of both witnesses raises the same problem, the danger of mistaken eyewitness identification.

The admission of the identification testimony by Moody is not *per se* error, as defendant argues, because of the trial court's denial of defendant's request for *voir dire*. The recent decision in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977), represents a modification of the ten-year-old doctrine of the *United States v. Wade, supra; Gilbert v. California, supra*; and *Stovall v. Denno, supra*, cases. The language of the decision is somewhat guarded and difficult in application, but we gather from the decision that even an unnecessarily suggestive identification procedure may produce admissible evidence if the court finds from the totality of the circumstances that the eyewitness identification possesses certain features of reliability. The totality of the circumstances test was adopted as set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972), which test has the following factors: (1) the witness's opportunity to view the perpetrator of the crime, (2) the witness's degree of attention, (3) the accuracy of his description of the criminal, (4) the level of certainty demonstrated by the witness, and (5) the time that elapses between the crime and the confrontation.

In *Manson*, an undercover police officer bought heroin from the defendant through an open doorway, observed him under good lighting conditions for two or three minutes, and shortly thereafter described him accurately. Two days later a single photograph was given to the officer who identified it as a photograph of the defendant. The Supreme Court held that the Due Process Clause did not compel the exclusion of the identification evidence since under the totality of the circumstances in the case there does not exist "a very substantial likelihood of irreparable misidentification," citing *Simmons v. United States, supra*.

In the case *sub judice*, the question before us is whether the eyewitness identification possessed the features of reliability to meet the test adopted in *Manson*. There was clear evidence of an unfair "one-on-one" in-custody confrontation, without emergency or exigent circumstances. *Moore v. Illinois*, --- U.S. ---, 98 S.Ct. 458, 54 L.Ed. 2d 424 (12 December 1977). The State did not offer this confrontation evidence, but the defendant in cross-

examination of Moody elicited the circumstances of his observation of defendant, both in the store and in the "show-up" confrontation at the police station, possibly because he was denied the opportunity of doing so in *voir dire* hearing. In applying the *Manson* totality of the circumstances test to the case before us we find material weaknesses in the eyewitness identification by Moody. He observed the defendant for only a few minutes at a time when there were many others in the store; he had no reason to pay particular attention; there is no evidence that he gave an accurate description of the perpetrator to anyone; and there was a time lapse of two months between the observation and the "show-up" confrontation. We note that State's witness Robinson, an accomplice, testified that defendant alone went in the Bestway Store, but Moody testified that both defendant and Robinson entered the store together and Robinson presented the check for payment.

We conclude that the evidence relating to Moody's observation of defendant at the Bestway Store on the afternoon of 10 April 1976 did not meet the standards of reliability imposed by *Biggers-Manson,* was in violation of the Due Process Clause, and that the trial court erred in not conducting a *voir dire* hearing for the purpose of determining if Moody's in-court identification should have been excluded because it was tainted by the unnecessarily suggestive in-custody confrontation. *See Moore v. Illinois, supra.*

This error was probably harmful to the defendant in the trial of the case. The erroneous ruling deprived defendant of any opportunity of presenting to the court, in the absence of the jury, the totality of the circumstances surrounding the initial observation by Moody and the subsequent suggestive confrontation. Defendant was thus forced to develop this evidence by cross-examination of Moody in the presence of the jury. We can only speculate as to defendant's trial tactics if the court had granted his request for *voir dire,* but a remand to the trial court for the limited purpose of conducting a *voir dire* to determine the admissibility of Moody's in-court identification would not render harmless the error in failing to conduct such *voir dire* during trial.

On retrial, if the State elects to offer the in-court identification testimony of Brian Moody, the trial court, by *voir dire,* must

In re Simon

determine its admissibility. However, the standards for its admissibility and the *Biggers-Manson* standards are similar, and the trial court's finding of admissibility would have to be supported by competent evidence.

The judgment is reversed and we order a

New trial.

Judges MORRIS and MITCHELL concur.