STATE OF NORTH CAROLINA v. DALLAS STEELE

No. 7526SC334

(Filed 19 November 1975)

**Criminal Law § 62— polygraph results — stipulation of admissibility**

In this prosecution for uttering a forged money order, the trial court did not err in the admission of the results of a polygraph test administered to defendant where defendant, defendant's attorney and the assistant district attorney entered into a written stipulation that the results of the polygraph test would be admissible in evidence, the court found that the polygraph operator was an expert in conducting and interpreting polygraph tests, defendant's attorney thoroughly cross-examined the polygraph operator regarding the nature of the test, its limitations, and the conditions under which the particular test was administered, and the court instructed the jury that the test results could not be considered as evidence of defendant's guilt but only as they might bear on defendant's credibility.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 17 January 1975 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 26 August 1975.

Defendant was tried upon a bill of indictment charging him with uttering a forged money order.

The evidence for the State was to the following effect:

Wilbur T. Foushee is the owner of several convenience stores known as Foushee's Jiffy Markets. During the night of 14 and the morning of 15 October 1973, his store on North Caldwell Street in Charlotte was broken into and twenty-eight money order blanks along with other items were stolen. State's Exhibit #1 was identified by him as one of the money orders reported as stolen. Foushee never authorized anyone to fill in the money order blank nor received money in return for it.

Teresa Green was working as a bank teller on 23 October 1973 when defendant approached her to cash a money order (which she identified as State's Exhibit #1). She telephoned another office, gave the number of the money order, and learned that it had been reported as stolen. The police arrived in a matter of minutes and took defendant into custody.

R. B. Crenshaw of the Charlotte Police Department identified State's Exhibit #2 as a handwriting exemplar of defendant which was taken in Crenshaw's presence.

State v. Steele

Lawrence A. Kelly, an examiner of questioned documents, testified that he compared the writing appearing in State's Exhibit #1 with that appearing in State's Exhibit #2. In the opinion of this witness, both were written by the same person.

To determine the admissibility of the results of a polygraph test administered to defendant, the trial judge conducted a voir dire hearing. After hearing testimony and receiving "Court's Exhibits" 1, 2, and 3, the trial judge made findings of fact, concluded that defendant had knowingly and voluntarily waived his right to object to the admission of the test results, and further concluded that the test results were admissible.

Officer W. L. Holmberg, a polygraph examiner for the Charlotte Police Department, testified in the presence of the jury concerning his qualifications, after which the trial court found him to be an expert "in the examination, conducting, and interpretation of the polygraph and its results." He testified that two relevant questions were asked and described defendant's reaction to the questions as "deception."

Defendant testified in his own behalf stating that he did not know that the money order was stolen.

The jury found defendant guilty as charged, and from judgment entered thereon defendant appealed.

*Attorney General Edmisten, by Associate Attorney Cynthia Jean Zeliff, for the State.*

*John G. Walker, for defendant appellant.*

MARTIN, Judge.

Defendant, defendant's attorney, and the assistant district attorney entered into a written stipulation which provided that the results of a polygraph test would be admissible in evidence. Despite the stipulation, defendant assigns error to the admission of the test results.

In 1923, the first appellate court to consider the admissibility of polygraph evidence set out the standard for acceptance which has been followed ever since. Appellant in *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923) had been convicted of murder and appealed the trial court's refusal to admit the results of a fairly primitive lie detector test he had taken. The Court of Appeals for the District of Columbia Circuit, affirming the

conviction, explained that the scientific basis for an expert's testimony must be ". . . sufficiently established to have gained general acceptance in the particular field in which it belongs." The Court held that the lie detector had not yet achieved such standing and scientific recognition and therefore, the evidence had been properly excluded. Most subsequent decisions have followed *Frye* in excluding polygraph evidence as scientifically unreliable, often merely quoting *Frye's* language.

Our Supreme Court has consistently held that the results of a polygraph test are not admissible in evidence to establish the guilt or innocence of one accused of a crime. *State v. Foye,* 254 N.C. 704, 120 S.E. 2d 169 (1961). This holding was reaffirmed in *State v. Brunson,* 287 N.C. 436, 215 S.E. 2d 94 (1975), and in *State v. Jackson,* 287 N.C. 470, 215 S.E. 2d 123 (1975).

While the weight of authority repudiates the polygraph as an instrument of evidence in the trial of criminal cases, a few courts have recognized an exception to the general exclusionary rule. This exception arises when the parties have stipulated before the trial that test results should be admissible on behalf of either the prosecution or defense. Courts which have considered the effect of a stipulation have not been consistent as to a result. *See Annot.,* 53 A.L.R. 3d 1005 (1973).

In *People v. Houser,* 85 Cal. App. 2d 686, 193 P. 2d 937 (1948), the Court held that where the defendant stipulated in writing that the entire results of the lie detector tests could be received in evidence on behalf of either the prosecution or the defense, and that the operator of the lie detector was an expert operator and interpreter of results of said tests, the defendant could not object on appeal to the admission of such evidence on the ground that the operator of the lie detector was not an expert. (There is nothing in this decision to indicate that the defendant made a timely objecton to the admission of this evidence at the trial.)

*State v. McNamara,* 252 Iowa 19, 104 N.W. 2d 568 (1960), appears to be the first appellate case which directly held that the polygraph results were correctly admitted over proper objection by defendant who had entered into a written pre-trial stipulation that such evidence would be admissible. The Iowa Supreme Court held for the first time that the results of the lie dectector examination were admissible by reason of the stipulation to that effect signed by both parties.

However, the New Mexico Court handed down an opinion in the next year directly opposed to that in the *McNamara* case. In *State v. Trimble,* 68 N.M. 406, 362 P. 2d 788 (1961), the Supreme Court of New Mexico reversed defendant's conviction for incest on the ground that "[t]he signing of a waiver did not alter the rule with regard to the admissibility . . ." of lie detector evidence. In this case the Court did not mention the *Houser* or *McNamara* decisions.

Thus, the situation was in a state of flux when *State v. Valdez,* 91 Ariz. 274, 371 P. 2d 894 (1962), came before the Arizona Supreme Court. Although support for both sides of the question could be found, most courts had not admitted polygraph evidence over proper objection, with or without a pre-trial stipulation. In *State v. Valdez, supra,* the Court followed the precedent set forth in the *Houser* and *McNamara* decisions. It held that, subject to certain qualifications announced therein, polygraph results and expert testimony relating thereto are admissible upon stipulation in criminal cases.

In *State v. Chavez,* 80 N.M. 786, 461 P. 2d 919 (1969), the Court took the position that the rule in New Mexico is that regardless of whether there is a stipulation, or regardless of the contents of the stipulation, evidence as to polygraph examinations and results is not admissible over objection. In the *Chavez* case, however, the evidence was admitted because the defendant did not object to testimony concerning the examination. The admission of the evidence which could have been excluded was the decision of defendant and his counsel.

As can be seen from the foregoing cases, the courts are beginning to allow more exceptions to the general exclusionary rule set out in the *Frye* case. "Although much remains to be done to perfect the lie-detector as a means of determining credibility we think it has been developed to a state in which its results are probative enough to warrant admissibility upon stipulation." *State v. Valdez, supra.* Though the reliability of polygraph evidence has improved, there are still arguments against admitting such tests into evidence on the ground that such an admission amounts to a violation of the privilege against self-incrimination. This privilege can be waived, however, by a voluntary consent to submit to such a test.

The Court in *State v. Valdez* set out certain qualifications which must be met before the courts in that state would allow

such evidence even upon stipulation. The qualifications are as follows:

"(1) That the county attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

(2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i.e. if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

(3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:

a. the examiner's qualifications and training;

b. the conditions under which the test was administered;

c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and

d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given."

Further, as suggested by the article in 46 Iowa L. Rev. 651 (1961), the following prerequisites must be met:

"Reliability depends greatly on the skill and experience of the expert. A much greater degree of interpretation is involved than in blood and ballistics tests. As prerequisites of admissibility, the qualifications of the examiner, questioning procedures, and the instrumentation should meet

State v. Steele

scientific standards. A proper foundation should be laid at trial as to each of these elements. Test results should be accompanied by interpretation by the examiner. When admitted, it should only be considered with all other evidence in determining the guilt or innocence of the accused. Limiting instructions should prevent the examiner from supplanting the jury. He is an expert offering testimony; the trier of fact is left with the decision of how much weight, if any, should be given his testimony."

In applying these conditions on admissibility to the facts in the present case, it appears that the parties sufficiently complied with these "safeguards" in order to assure reliability of the test results. The defendant, his attorney, and the assistant district attorney stipulated in writing that the results of the polygraph examination would be admissible. According to the stipulation, defendant voluntarily requested a polygraph examination after being advised of its inadmissibility except by stipulation of all the parties. It was further agreed that the polygraph examination would consist of a conference, pretesting, total chart minutes, and interrogation by a qualified polygraph examiner. On voir dire the court found that defendant was ". . . thirty-three years of age, of sound mind, who finished the twelfth grade in high school, who without threats, duress, coercion, force, promises of immunity or reward, understandingly agreed and stipulated to take the polygraph examination, with the full understanding that whatever the results were they would be admissible into evidence, and with the further understanding from the District Attorney's Office that if the results indicated that there was no deception in his part during the course of examination, that the charges lodged against him would be nol prossed. . . ."

The court concluded that the results of the polygraph test were admissible and that the defendant voluntarily and understandingly waived his right to object to the admission of the test results. The judge found W. O. Holmberg to be an expert in the conduction and interpretation of a polygraph test and its results. Holmberg was cross-examined thoroughly by defendant's attorney regarding the nature of the test, its limitations, and the conditions under which the particular test was administered. In his charge to the jury the trial judge instructed them not to consider the results of the test as evidence of de-

fendant's guilt but that they could consider such evidence as it might bear on defendant's credibility.

Since the essential safeguards on the admission of polygraph evidence upon stipulation were met in this case, the trial court properly admitted the results of the polygraph into evidence.

The defendant had a trial free from prejudicial error.

No error.

Judges BRITT and HEDRICK concur.