STATE OF NORTH CAROLINA v. JAMES THOMPSON

No. 7826SC166

(Filed 29 August 1978)

1. **Criminal Law § 66.15— in-court identifications—independent origin—no taint from pretrial procedures**

    In-court identifications of defendant by two robbery victims and another witness were properly admitted where the evidence supported the court's determination that the in-court identifications were of independent origin and not tainted by pretrial lineup or photographic identifications.

2. **Criminal Law § 66.9— photographic identifications—six photographs—more than one photograph of defendant—time between crime and identification**

    Pretrial photographic identifications of defendant were not impermissibly suggestive because only six or seven photographs were shown to the witnesses, because more than one photograph of defendant was included in those shown to the witnesses, or because there was a lapse of nearly four weeks between the crime and the photographic identification.

3. **Criminal Law § 66.6— lineup two days after photographic identification—no suggestiveness**

    A lineup was not impermissibly suggestive because it was held only two days after photographic identifications of defendant by the witnesses.

**4. Criminal Law § 66.4— lineup—non-testimonial identification order not required**

A non-testimonial identification order was not required for defendant's appearance in a lineup where defendant was in custody on another charge at the time of the lineup.

**5. Criminal Law § 66— identification of robber as "defendant"**

It was not improper in an armed robbery case to permit witnesses on various occasions to identify one of the robbers as "defendant."

**6. Criminal Law § 62— polygraph results—stipulation of admissibility**

In this prosecution for armed robbery, the trial court did not err in the admission of a polygraph operator's opinion that defendant displayed deception during a polygraph test when he denied committing the robbery where defendant, his attorney and the assistant district attorney entered into a written stipulation that the results of the polygraph test would be admissible in evidence; the court conducted a voir dire and determined that defendant voluntarily requested the test and signed the stipulation; the trial court found the witness to be an expert in the field of polygraph examinations; defendant's attorney cross-examined the operator about the test; and the court instructed the jury that the operator's testimony should be considered only as it might bear on defendant's credibility.

**7. Criminal Law § 89.10— impeachment of defendant—robberies on certain dates—reference to pending indictments**

The trial court in a prosecution for armed robbery did not err in permitting the State to impeach defendant by asking him whether he robbed certain persons on certain dates, even if the prosecutor was looking at indictments pending against defendant as defendant was being cross-examined, where there was no indication of bad faith on the part of the State or that the jury knew the nature of the notes or documents the prosecutor was using.

**8. Criminal Law § 89.2— competency of testimony for corroboration**

In an armed robbery prosecution, a witness's testimony that the victim answered affirmatively when the witness asked her, "Was it the two black guys that just left in your car?" was competent to corroborate the victim's testimony.

**9. Robbery § 3— permission to remove property—nonresponsive answer—absence of prejudice**

Defendant in an armed robbery case was not prejudiced when the victim, upon being asked whether he gave defendant permission to remove the contents of his pockets, gave an unresponsive answer that he didn't even give his wife that permission, since the clear import was that permission had not been given, and the victim had already testified that defendant removed the contents of his pockets at gunpoint.

**10. Robbery § 4.3— taking property from presence of victim—victim in another room**

Property was taken from the presence of the victim and the crime constituted armed robbery where the victim was forced at gunpoint to leave an office and enter a bathroom and the property was then taken from the office.

**11. Robbery § 4.3— armed robbery—nonsuit—real or toy pistol**

Nonsuit was not required in armed robbery cases because one victim testified that she "couldn't tell if it was a toy pistol."

**12. Robbery § 5.4— armed robbery—use of two guns—uncertainty as to whether one gun was real—failure to submit common law robbery**

The trial court in an armed robbery case was not required to charge on the lesser included offense of common law robbery because of a victim's uncertainty as to whether a gun used in the robbery was real where the evidence showed that two guns were used in the robbery and the uncertainty involved only one of the guns.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 23 September 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 19 June 1978.

Defendant was charged in three bills of indictment proper in form with the offenses of armed robbery and was found guilty of the armed robbery of one Faye Jenkins and one William Hasty. (During the trial, the trial court ruled that two of the charges, #76CR65156 and 7, were merged.) The offenses were committed in Jenkins' office in Central Square Apartments in Charlotte. Defendant received 40-year sentences in the custody of the Department of Correction.

Prior to trial, defendant moved to suppress certain identification testimony. A voir dire was held, at which the State's evidence tended to show that: Jenkins was manager of Central Square Apartments; Jenkins and Hasty, another Central Square employee, were in the apartment office on 5 October 1976 when defendant came to the door and inquired about an apartment; defendant and another man then entered the office and pulled out guns; the robbers put both Jenkins and Hasty in a bathroom and took the latter's wallet and keys; the robbers searched the office and then returned to the bathroom to ask Jenkins where her money and car keys were; and one Linda Sutton who lived in the same building, saw defendant and the other man at close range as they left the office and drove away in Jenkins' car.

Officer Parker testified on voir dire that: he showed groups of photographs to the three witnesses which did not include defendant, and they could not identify anyone; Jenkins and Hasty thereafter viewed a lineup which did not include defendant, and they could not identify anyone; on 1 November 1976, the officer showed the three another group of photographs, and they each selected defendant's picture; he then showed the witnesses a more recent picture of defendant; and the three witnesses viewed separately another lineup on 3 November at which Jenkins and Hasty selected defendant, and Sutton did not pick anyone out. Each of the three witnesses testified that Officer Parker had never indicated to them which photograph or person he or she should select and that their selections were based upon their observations at the time of the robberies.

Defendant presented on voir dire the testimony of a local public defender who had observed the 3 November lineup. He stated that he did not represent defendant. At the close of the hearing, the trial court entered an order finding facts and admitting the identification testimony. Jenkins, Hasty, Sutton, and Parker then gave similar testimony before the jury.

As its final witness, the State presented Officer Holmberg to testify as to a polygraph test. Defendant's motion to suppress was denied. Holmberg testified that he administered a polygraph test to defendant on 7 July 1977 and that in his opinion, the results showed deception when defendant denied committing the robberies.

Defendant testified and presented several witnesses in corroboration. He denied having participated in the robberies, and he and other witnesses testified as to his whereabouts on 5 October 1976. Defendant appealed.

*Attorney General Edmisten, by Associate Attorney Nonnie F. Midgette, for the State.*

*Tate K. Sterrett, for defendant appellant.*

ERWIN, Judge.

[1]  Defendant presents 14 arguments on this appeal, and we find no error· for the reasons stated. He first contends, in three

assignments of error, that the trial court erred in denying his motion to suppress evidence of pretrial and in-court identifications of defendant by Jenkins, Hasty, and Sutton. He maintains that the pretrial procedures were improperly suggestive and that the in-court identifications were based on the improper procedures and were not of independent origin. We do not agree.

First, as to the in-court identifications of defendant, even if we were to assume that the pretrial identifications were improper, the trial court, in its comprehensive findings following voir dire, found that the in-court identifications were "of independent origin, based solely upon what the prosecution witnesses saw and observed at the time of the armed robbery." The witnesses had ample opportunity to see defendant at the time of the robberies from short distances in a well-lighted area. There was ample evidence to support the trial court's finding as to the independent origin of the in-court identifications, and it is binding upon us. *State v. Bundridge*, 294 N.C. 45, 239 S.E. 2d 811 (1978), and *State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974).

As to pretrial identification, our Supreme Court has stated the test as follows in *State v. Henderson*, 285 N.C. 1, 9, 203 S.E. 2d 10, 16 (1974), *modified on other grounds*, 428 U.S. 902, 49 L.Ed. 2d 1205, 96 S.Ct. 3202 (1976):

> "[T]he test . . . is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." (Citations omitted.)

*See also State v. Long*, 293 N.C. 286, 237 S.E. 2d 728 (1977). In essence, defendant argues that the photographic identifications were impermissibly suggestive, that the subsequent lineup identification was tainted thereby, as was the identification of defendant at the probable cause hearing.

As stated above, the record supports the trial court's finding that the witnesses had ample opportunity to observe defendant at the time of the robberies under conditions conducive to accurate identification. All of the witnesses testified that the officer did not tell them which photograph to select, nor did he tell them that a suspect's picture was in the group.

[2]  Defendant maintains that the small number, apparently six or seven, of photographs shown to the witnesses on 1 November 1976, testimony tending to show that more than one photograph of defendant was among them, alleged discrepancies between descriptions given the police and defendant's actual height and weight, and the lapse of time between the offenses and the photographic identifications show that the procedures were conducive to misidentification. We note that relatively small numbers of pictures were shown to witnesses in several cases in which sufficient suggestiveness as to violate a defendant's rights was not found. *State v. Bundridge, supra; State v. McKeithan*, 293 N.C. 722, 239 S.E. 2d 254 (1977); *State v. Long, supra;* and *State v. Shore*, 285 N.C. 328, 204 S.E. 2d 682 (1974). Nor do we think that the apparent inclusion of more than one photograph of defendant renders the photographic identifications impermissibly suggestive. We further note that in *State v. McKeithan, supra,* there was a longer lapse of time between the crime and the photographic identification than the delay herein.

Viewing the "totality of the circumstances," we conclude that the pretrial photographic identifications were not "so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." The testimony reveals that the witnesses were unprompted and viewed the photographs separately. All the witnesses were quite sure of their identification of Thompson:

Jenkins: "As to why I have identified James Thompson as the person who robbed me on October 5, because he was the man that robbed me. There is no question in my mind. I am absolutely positive."

Hasty: "This is the man that stepped into the apartment, asked for an apartment, held a gun on us, marched me into a bathroom and removed items of my personal effects from my pockets."

Sutton: "Yes, today I can point out the defendant as being the person I saw coming out of Mrs. Jenkins' office, getting into her car, coming back, going into her office, and getting back into her car on October 5, 1976. There is no doubt in my mind about that."

[3] Turning to the lineup identifications, defendant states in his brief that he "does not question per se the composition of the lineup or the manner in which the identification procedure was conducted." Defendant does contend, however, that no lineup should have been conducted, that it took place only two days after the photographic identifications, and that "[t]he police obviously were trying to fortify and solidify the witnesses' image of Defendant so that they could make in-court identifications of him." Jenkins had indicated to the police her desire to see "at long range" the man whose photograph she had selected. Again, the testimony indicates that there was no prompting and that the witnesses viewed the lineup separately. On the one hand, defendant argues that too much time elapsed between the crime and the photographic identifications, and on the other hand, he maintains that too little time elapsed between the photographic and lineup identifications. Defendant's contention that the police were merely seeking to securely implant defendant's image in the witnesses' minds is speculative and unsupported by the record. In substance, defendant seeks a rule of law requiring that photographic identifications may not be quickly followed by lineup identifications. We decline to adopt such a rule. The test remains that stated in *State v. Henderson, supra,* and we conclude that the lineup identifications herein do not violate due process.

[4] Defendant next contends that the lineup was conducted without the issuance of a non-testimonial identification order required by G.S. 15A-271 *et seq.* and, therefore, it was error to allow testimony of both the out-of-court and in-court identifications.

Defendant, however, concedes that he was in custody on another charge at the time of the lineup. Our Supreme Court in *State v. Irick,* 291 N.C. 480, 490, 231 S.E. 2d 833, 840 (1977), held as follows:

"[A]rticle 14 of Chapter 15A applies only to suspects and accused persons before arrest, and persons formally charged and arrested, who have been released from custody pending trial. *The statute does not apply to an in custody accused . . . ."* (Emphasis added.)

Thus, this assignment of error is overruled.

[5]  Defendant argues that it was improper to permit the witnesses on various occasions to identify one of the robbers as "defendant," contending that this created "a false sense of familiarity." Defendant cites no authority for this proposition, and we have found none. This assignment of error is without merit.

Citing numerous exceptions, defendant contends that the trial court abused its discretion in permitting the district attorney to ask leading questions and should have declared a mistrial on its own motion. Clearly it is within the trial court's discretion in permitting leading questions on direct examination, and its discretion will not be reviewed on appeal absent an abuse thereof. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). We see no such abuse on this record. In fact, many of defendant's objections to leading questions were sustained.

We likewise see no abuse of discretion in the trial court's permitting the State to recall Jenkins as a witness. Permitting a witness to be recalled rests in the sound discretion of the trial court. *State v. Stewart*, 16 N.C. App. 419, 192 S.E. 2d 60 (1972); 1 Stansbury's N.C. Evidence § 24 (Brandis rev. 1973). Further, defendant contends that the trial court should have excluded Jenkins' testimony on recall, as it was "so vague, uncertain, and remote that it was irrelevant." Suffice it to say that this testimony was clearly relevant as an effort by the State to establish what property was taken and when it was taken.

[6]  In three assignments of error, defendant attacks the admission of certain testimony pertaining to the polygraph test. In *State v. Steele*, 27 N.C. App. 496, 219 S.E. 2d 540 (1975), this Court carefully and thoroughly detailed the conditions under which polygraph results would be admitted on stipulation. The record reveals that: (1) defendant, his attorney, and the assistant district attorney all signed a stipulation to the effect that defendant voluntarily requested a polygraph examination, that the results would be admissible irrespective of their nature, unless such results were inconclusive, and that W. O. Holmberg (the same examiner involved in *State v. Steele, supra,*) is a qualified examiner, and he would conduct the test and interpret the results; (2) defendant signed a voluntary request and authorization for the test; (3) the trial court conducted an extensive voir dire as to voluntariness of defendant's request and stipulation and his understanding thereof; (4) there was considerable foundation

laid as to the skill and experience of Officer Holmberg, the questioning procedures, and the instrumentation; (5) Officer Holmberg was accepted by the trial court as an expert in the field of polygraph examinations; (6) the witness testified that in his opinion, defendant displayed deception; (7) defendant cross-examined the officer; and (8) the trial court instructed the jury in pertinent part, that:

> "[S]uch testimony does not tend to prove or disprove any elements of the crime the defendant is accused of having committed, nor did such testimony tend to establish the defendant's guilt of such crime. . . . [A]t most, such testimony tended only to indicate that at the time of the examination of the defendant, the defendant, in the opinion of the witness was not telling the truth. . . . [T]he jury . . . should only consider the witness's testimony only as it might bear on the defendant's credibility. . . . The court further instructed the jury that whatever weight the testimony should receive was for the jury to determine."

We conclude that the safeguards, as stated in *State v. Steele,* *supra,* governing the admission of polygraph evidence upon stipulation were satisfied herein. We have carefully considered defendant's assignments of error pertaining to the polygraph examination and the testimony of Officer Holmberg, and we find none to be sustainable.

[7]  Next, relying on *Watkins v. Foster,* 570 F. 2d 501 (4th Cir. 1978), defendant contends that the trial court erred in permitting the State to impeach defendant by asking him whether he robbed certain persons on certain dates.

It is well established in this jurisdiction that a witness, including a criminal defendant, may be asked on cross-examination whether he has committed certain criminal acts. *State v. Waddell,* 289 N.C. 19, 220 S.E. 2d 293 (1975), *modified on other grounds,* 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3211 (1976). Such questions must be asked in good faith, and the scope of the questions is subject to the discretion of the trial court. *State v. Williams,* 292 N.C. 391, 233 S.E. 2d 507 (1977). We do not perceive any indication of bad faith on the part of the State, nor do we see an abuse of trial court discretion. Defendant contends that the assistant district attorney was looking at indictments pending against him

as he was being cross-examined. Even if we were to assume the truth of that contention, there is no indication that the jury knew the nature of the notes or documents the prosecution was using. An argument analogous to defendant's was rejected by our Supreme Court in *State v. Foster*, 293 N.C. 674, 239 S.E. 2d 449 (1977).

Further, we think that *Watkins v. Foster, supra,* decided by a divided panel of the U. S. Fourth Circuit Court of Appeals, is readily distinguishable from defendant's case. In that case, the Court held that the cross-examination of petitioner at his trial was prejudicial and deprived him of a fair trial. First, we note that the State's case against Foster consisted solely of fingerprint evidence; the evidence against defendant Thompson is not nearly so sparse. Further, there was reason to question the State's good faith in propounding the questions it put to Foster on cross-examination; as stated above, we see no basis to question the prosecution's good faith herein. Accordingly, this assignment of error is overruled.

[8]    Defendant's next assignment of error pertains to testimony of State's witness Sutton as to what Jenkins had told her in response to Sutton's question, "Was it the two black guys that just left in your car? And she said, Yes." This testimony was admitted solely for the purpose of corroborating Jenkins' testimony, should the jury find that it did so, and the trial court so instructed the jury. We think that clearly the above portion of Sutton's testimony, to which defendant excepts, was corroborative of Jenkins' testimony, or so the jury could find, and was competent for that purpose.

[9]    Defendant next excepts to the following testimony of State's witness Hasty:

"Q. Did you give Thompson permission to do that (remove the contents of Hasty's pockets)?

A. I don't even give my wife that permission."

Defendant contends that Hasty's answer was unresponsive. There was no prejudicial error. While the answer was flippant, its clear import was that such permission had not been given. Hasty had already testified that two men, one of whom was defendant, entered the apartment with guns, and took Hasty and Jenkins to

a bathroom, and that defendant frisked him and removed the contents of his pockets, including about $150.

[10] Defendant assigns error to the failure of the trial court to grant his motions for judgment as of nonsuit. He first contends that as to the merged cases, the alleged offenses did not occur in the presence of the victims, as they were not in the same room as the one from which the property was taken. We decline to adopt such a narrow view. To do so would seemingly invite would-be perpetrators to waylay their victims in one location and then as part of the same transaction, to take their property from another nearby location, thereby avoiding guilt of robbery, even if the other elements of the offense were present. Here the evidence tends to show one continuing transaction and that force or intimidation was used to accomplish the taking.

> " 'Presence,' within the rule that a taking of property from the presence of another may constitute robbery, means a possession or control so immediate that violence or intimidation is essential to sunder it. A thing is in the presence of a person, with respect to robbery, which is so within his reach, inspection, observation, or control that he could, if not overcome by violence or prevented by fear, retain his possession of it." 77 C.J.S. Robbery, § 9, p. 455.

See also State v. Dunn, 26 N.C. App. 475, 216 S.E. 2d 412 (1975).

[11] Defendant's further contention that nonsuit should have been granted in all of the cases because Jenkins testified on cross-examination that "I couldn't tell you if it was a toy pistol" is also without merit. The evidence tends to show that defendant had a gun. This assignment of error is overruled.

[12] In his final assignment of error, defendant argues that the trial court erred in failing to instruct the jury on the lesser-included offense of common law robbery and in failing to submit same to the jury, in the absence of a request to do so. Again, defendant asserts that Jenkins' "uncertainty" as to whether or not the gun was real supports his argument. He relies on State v. Keller, 214 N.C. 447, 199 S.E. 620 (1938), State v. Jackson, 27 N.C. App. 675, 219 S.E. 2d 816 (1975), and State v. Faulkner, 5 N.C. App. 113, 168 S.E. 2d 9 (1969). We find Keller and Jackson readily distinguishable from the instant case in that in those cases, there

was doubt as to whether the perpetrators had any weapon at all. Concededly, *State v. Bailey*, 278 N.C. 80, 178 S.E. 2d 809 (1971), and *Faulkner* support defendant's contention. However, in the latter two cases, the evidence indicated that only one "gun" was involved. Here the evidence tends to show that *two* "guns" were involved, and Jenkins' uncertainty was as to whether *one* gun might have been a toy and not both of them. We feel, therefore, that the evidence did not require an instruction on common law robbery. *See State v. Evans*, 25 N.C. App. 459, 213 S.E. 2d 389 (1975).

Having considered defendant's contentions, we conclude that he had a fair trial, free of prejudicial error.

No error.

Judges BRITT and ARNOLD concur.