State v. Thompson

———————

STATE OF NORTH CAROLINA v. JAMES THOMPSON

No. 7826SC771

(Filed 16 January 1979)

1. **Constitutional Law § 53 — delay between arrest and trial — no denial of right to speedy trial**

    Defendant was not denied his right to a speedy trial on an armed robbery charge by the delay between his arrest on 27 October 1976 and his trial in the

latter part of April 1978 where the case was calendared for trial and post-
poned at defendant's request in March, April and August 1977; in September
1977 defendant was tried on other armed robbery charges pursuant to the re-
quest of defendant's attorney that those charges be first tried; defendant's
counsel and the prosecuting attorney engaged in extensive plea bargaining
negotiations in connection with the present case in the fall of 1977, but no
agreement was reached, and the present case was placed on the calendar for
trial on 20 February 1978; the case was continued in February 1978 because of
defendant's illness; defendant's only motion relating to a speedy trial was
made on 28 March 1978, and his trial occurred within 30 days thereafter; and
defendant was not prejudiced by the delay since witnesses referred to in
defendant's motion were unavailable at any time after the end of 1976, and
failure to bring defendant to trial before the end of 1976 was not of such dura-
tion as to amount to a denial of defendant's right to a speedy trial.

**2. Criminal Law § 75.2— in-custody statements—effect of statements by officer**

Defendant's testimony that he told officers that he had been to the office
of a finance company in which a robbery occurred to inquire about purchasing
a repossessed car because he felt like he had to clear himself after an officer
told defendant he had statements from three witnesses that they had seen
defendant leaving the scene shortly after the robbery did not compel the con-
clusion that defendant's statements were involuntary where there was no
evidence that what defendant testified the officer told him was false.

**3. Robbery § 5.4— failure to instruct on common law robbery—uncertainty as to
whether guns were real**

The trial court in an armed robbery case erred in failing to charge the
jury on the lesser included offense of common law robbery where some uncer-
tainty, albeit minimal, was expressed by the State's witnesses as to whether
both of the guns used in the robbery were real or fake.

Judge ERWIN dissenting.

APPEAL by defendant from *Ferrell, Judge*. Judgment entered
26 April 1978 in Superior Court, MECKLENBURG County. Heard in
the Court of Appeals 5 December 1978.

Defendant was tried on his plea of not guilty to a charge of
armed robbery. The State presented evidence to show that the
defendant, armed with a pistol, and another man, armed with a
shotgun, entered the office of Associates Financial Services, Inc.
in Charlotte shortly after 4:30 p.m. on 17 September 1976. The
defendant and his companion ordered the three employees pres-
ent into the storage room, took $1,750.00, and departed. Each of
the employees, Myra Wright, Beverly Shinn, and J. M. Lamond,
testified at the trial, identifying the defendant and describing the
robbery.

Defendant did not testify. Defendant's wife testified that defendant, accompanied by their daughter, left their home in Charlotte at some time after 4:00 p.m. on 17 September 1976 to get tennis shoes for the daughter, that they returned home between 5:00 and 6:00 p.m. bringing new tennis shoes, and that defendant left shortly thereafter for Florida. The owner of a motel in Niceville, Florida, which is about 700 miles from Charlotte, testified that at some time between 9:00 a.m. and 10:00 a.m. on 18 September 1978 defendant registered in his motel.

The jury found defendant guilty as charged. From judgment sentencing defendant to prison for a term of fifty years, with credit for time spent in pretrial confinement, defendant appeals.

*Attorney General Edmisten by Assistant Attorney Nonnie F. Midgette for the State.*

*Tate K. Sterrett for defendant appellant.*

PARKER, Judge.

[1] Defendant first assigns error to the denial of his motion to dismiss made on the ground that he had been denied his right to a speedy trial. "Factors to be considered in deciding whether a defendant has been denied his right to a speedy trial are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to defendant resulting from the delay." *State v. Hudson,* 295 N.C. 427, 432, 245 S.E. 2d 686, 690 (1978). The length of the delay is not in itself determinative, but all four factors must be weighed and balanced against each other to determine whether there has been a denial of the constitutional right to a speedy trial. An undue delay which is arbitrary, oppressive, or due to the prosecution's deliberate effort to hamper the defense violates the constitutional guarantee of a speedy trial. *State v. Hudson, supra.*

"The question whether a defendant has been denied a speedy trial must be answered in light of the facts in the particular case." *State v. Smith,* 289 N.C. 143, 148, 221 S.E. 2d 247, 250 (1976). In the present case, defendant was arrested on 27 October 1976. During October and November 1976 he was also arrested on several other armed robbery charges, including three concerning robberies alleged to have been committed at the Central Square

Apartments in Charlotte. On 28 October 1976 counsel was appointed to represent the defendant in this and in the other cases pending against him. On 6 December 1976 the grand jury returned the indictment in the present case as a true bill against the defendant. On 12 January 1977 defendant waived arraignment and entered pleas of not guilty to this and the other charges pending against him. In discussions between defendant's counsel and the prosecuting attorney, defendant's counsel indicated that he had an extremely busy trial schedule through the month of February and until the middle of March, 1977, and that he could not be prepared to try defendant's cases during that period. The prosecuting attorney advised defendant's counsel that he would not call these cases until defendant's counsel was ready for trial. Defendant's counsel also requested that only one of the cases against defendant be called for trial, and the prosecuting attorney indicated it was his intention to call the Central Square Apartment cases for trial first. When all of the cases against the defendant were placed on the calendar for trial on 15 March 1977, defendant's counsel reminded the prosecuting attorney of their prior understanding. On being thus reminded, the prosecuting attorney requested the presiding judge to remove the cases from the trial calendar at that time, and the trial judge acceded to this request. The prosecuting attorney later indicated his intention to recalendar the cases against defendant for the middle of April, 1977. About 30 March 1977 defendant's counsel wrote to the prosecuting attorney indicating he would be out of town from 18 to 20 April and requesting that the cases not be called at that time. The defendant then requested a polygraph examination which could not be scheduled until 7 July 1977. (Defendant did not pass the polygraph examination.) Thereafter, defendant's counsel requested that the cases not be calendared in August 1977 because of his vacation plans. The cases were placed on the calendar for 29 August 1977, but prior thereto defendant's counsel advised the prosecuting attorney that he had problems with witnesses and needed a continuance in order to get these witnesses. Defendant's counsel prepared a letter, which defendant signed, requesting a continuance for two or three weeks.

On 19 September 1977 defendant was brought to trial on the armed robbery charges which arose out of robberies which had occurred at the Central Square Apartments. He was found guilty

and was sentenced to prison for a term of forty years. (On appeal from judgment in that case, this Court found no error in opinion filed 29 August 1978. *State v. Thompson*, 37 N.C. App. 651, 247 S.E. 2d 235 (1978).)

During the fall of 1977, following the trial of the Central Square Apartments cases, defendant's counsel and the prosecuting attorney engaged in extensive plea bargaining negotiations in connection with the present case. No agreement could be reached, and the present case was placed on the calendar for trial on 20 February 1978, but defendant's illness forced a continuance.

On 28 March 1978 defendant filed a motion to dismiss the present case on the ground that he had been denied his constitutional right to a speedy trial. In this motion, and in an affidavit filed in support thereof, defendant alleged that certain witnesses who had accompanied him on his trip to Florida and who could testify as to his whereabouts on 17 September 1976 were no longer in North Carolina and that the defendant did not know where they were, so that these witnesses had become unavailable to testify in defendant's behalf. A hearing was held on defendant's motion, following which the trial court entered an order making detailed findings of fact which, in substance, are as hereinabove set forth. In addition, the court found that there was no showing that the witnesses referred to in defendant's motion would have been available at any time after the end of 1976. On these findings, the court denied defendant's motion to dismiss made on the ground that his constitutional right to a speedy trial had been violated. In this ruling we find no error.

"[T]he burden is on an accused who asserts denial of a speedy trial to show that the delay was due to the neglect or wilfulness of the prosecution," and "[a]n accused who has caused or acquiesced in the delay will not be allowed to use it as a vehicle in which to escape justice." *State v. McKoy*, 294 N.C. 134, 141, 240 S.E. 2d 383, 388 (1978). The present case was calendared to be tried no less than four times prior to the trial. In March, April, and August, 1977, the trial was postponed at the defendant's request. In February 1978 it was postponed because of defendant's illness. There was no showing that the trial was ever arbitrarily delayed by the prosecution or that the prosecution engaged in

any deliberate effort to hamper the defense. On the contrary, the record reveals that the prosecution cooperated with defendant's counsel in an effort to assure that the trial of this case should take place at a time which would be fair both to the State and to the defendant. At no time did defendant ever request a speedy trial, his first and only motion relating to a speedy trial being his motion to dismiss the charges against him based on his contention that he had already been denied his constitutional right to a speedy trial. This motion was made on 28 March 1978, and the trial of this case occurred within thirty days thereafter. Finally, there was no showing that defendant was prejudiced by delay in his trial, at least as to such delay as occurred after 1976. The record supports the trial court's finding that there was no showing that the witnesses referred to in defendant's motion would have been available at any time after the end of 1976. Certainly, any failure to bring defendant to trial between the time of his arrest on 27 October 1976 and the end of 1976 could not reasonably be considered of such duration as to amount to a denial of defendant's constitutional right to a speedy trial, and defendant does not so contend. When the four factors to be considered in deciding whether defendant in this case has been denied his constitutional right to a speedy trial are weighed and balanced, we agree with the trial court's conclusion that there was no such denial in this case. Defendant's first assignment of error is overruled.

Defendant next assigns error to the denial of his motion to suppress evidence concerning his oral and written statements made to the police following his arrest. In these statements defendant denied committing the robbery but admitted he had been to the office of Associates Financial Services, Inc., stating he had been there for the purpose of inquiring about the possibility of purchasing a repossessed automobile. Defendant contends that evidence concerning his statements should have been suppressed because his statements were not voluntary. Prior to ruling on defendant's motion the trial court held a voir dire hearing at which both the State and the defendant presented evidence concerning the circumstances under which defendant's statements were made. Following this hearing the court entered an order making detailed findings of fact, including findings that prior to making any statements defendant had been fully advised of his constitutional rights and had signed a written waiver of those

rights. Based on its detailed findings of fact, the court found that defendant's statements had been voluntarily made.

[2]   A trial judge's finding that an accused freely and voluntarily made an inculpatory statement will not be disturbed on appeal when the finding is supported by competent evidence. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976). Here, there was ample evidence to support the trial judge's findings that defendant's inculpatory statements to the police were voluntarily made. Defendant's testimony at the voir dire hearing that he made his statements because he "felt like [he] had to clear [himself]" after the police officer had told him that he had three statements from three different people saying that they had seen defendant leaving the scene shortly after the robbery, does not compel the conclusion that his statements were involuntary. *State v. Anderson*, 208 N.C. 771, 182 S.E. 643 (1935), cited and relied on by the defendant, is distinguishable. In *Anderson* a confession was held not competent because it appeared from the testimony of the State's witness that the confession was obtained by falsely telling the confessor that his co-defendants had talked and that defendant had better confess. Here, there was no evidence that what defendant testified the police officer had told him concerning having statements from three other persons was false. Moreover, defendant himself testified on cross-examination at the voir dire hearing that any statements he gave the police were freely and voluntarily made. There was no error in overruling defendant's motion to suppress and in the admission in evidence of defendant's inculpatory statements.

Defendant has brought forward a number of assignments of error in arguments numbered 3 through 7 in his brief. We have examined these carefully and find no error in connection with any of the assignments of error thus brought forward. We do not feel that any of these merit discussion, particularly since defendant must be awarded a new trial for the reason hereinafter stated.

[3]   Defendant's final contention is that the trial court erred in failing to charge the jury on the lesser included offense of common law robbery and in failing to submit an issue as to defendant's guilt or innocence of that offense. "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from

which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor. Hence, there is no such necessity if the State's evidence tends to show a completed robbery and there is *no conflicting evidence* relating to elements of the crime charged. Mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice." *State v. Hicks*, 241 N.C. 156, 159-60, 84 S.E. 2d 545, 547 (1954).

In the present case all three victims of the robbery, Myra Wright, Beverly Shinn, and J. M. Lamond testified as State's witnesses on direct examination that defendant used a chrome pistol and his companion used a sawed-off shotgun to perpetrate the robbery. Defendant did not testify before the jury but presented evidence tending to establish an alibi. Thus, conflict in the evidence, if conflict exists, as to whether the robbery in this case was perpetrated by the use or threatened use of any firearms or other dangerous weapon, must be found, if at all, in the State's evidence. On direct examination the State's witness, Myra Wright, testified that the shotgun used by one of the robbers was held "right on [her] forehead" and that it "felt like cold metal." On direct examination the State's witness, Beverly Shinn, testified that defendant had a gun in his hand and that "[i]t looked like a chrome pistol," that "[h]e came back to [her] desk and held it to [her] stomach," and that "[i]t was definitely metal of some kind." However, on cross-examination the State's witness, Myra Wright, testified: ·

> As to whether it is true that I don't know whether the shotgun about which I have testified was a real gun, a fake gun, a toy gun, or what kind of gun, whatever kind of gun it was, it was metal and did not look like a toy. No, I don't know that it wasn't a toy gun. No I don't know whether it was a fake gun, either. With respect to the pistol about which I have testified, it was metal and did not look like a toy. I do not know whether it was real or whether it was a toy. It was shiny like chrome.

And on cross-examination the State's witness, J. M. Lamond, testified:

> With respect to the pistol, I don't know whether it was a real pistol, fake pistol, or what kind of pistol. It looked very real. It was not a cap pistol.

In our opinion any conflict in the State's evidence which might reasonably be viewed as raising a question as to whether the robbery in this case was effected with the use of firearms was minimal indeed. We would be inclined to agree with the trial court that the evidence in this case was insufficient to warrant submission of common law robbery as a possible verdict except for the decision of our Supreme Court in *State v. Bailey*, 278 N.C. 80, 178 S.E. 2d 809 (1971). In that case, as in this one, the defendant was tried on his plea of not guilty to a charge of armed robbery. The State presented the testimony of the victim of the robbery who testified that about 2:40 p.m. on 23 March 1970 the defendant, who was known to her, came into her place of employment accompanied by another man and, while threatening her with a pistol, demanded the money in the register; that she gave him $84; and that the two men fled. On cross-examination she testified: ". . . I don't know whether it was a real or toy pistol or whether it was metal or rubber." The State also presented evidence to show that the defendant was apprehended about 7:15 p.m. on the day of the robbery and that shortly thereafter, after having been duly advised of his rights, he confessed to the robbery and told the investigating officers that he divided the money with other persons involved and returned the .22 caliber pistol he used to its owner. Defendant's evidence tended to show that he had spent the day in question drinking wine and "shooting" heroin, that he remembered nothing from the time he passed out about noon until he was awakened that night, that he did not remember the robbery, but that he remembered confessing because the officers kept asking him about the robbery. On this evidence our Supreme Court found a sufficient conflict to trigger the requirement for an instruction on common law robbery. In this connection the Court said:

Here, the State's witness Loretta Williams testified that defendant robbed her by use of a pistol. On cross-examination she said that she did not know whether it was a "real or toy pistol." The State offered defendant's confession, which contained a statement by defendant that he used a .22 caliber pistol to rob Loretta Williams. However, defendant testified before the jury that because of the effect of wine and heroin in his system he passed out about noon on the day the crime was committed and remembered nothing until he was awak-

ened that night by friends. He specifically denied any recollection of the alleged robbery or the possession by him of a pistol.

This conflicting testimony raised an issue for the jury as to whether defendant had in his possession and used or threatened to use a firearm or other dangerous weapon to perpetrate the robbery.

The critical and essential difference between armed robbery and common law robbery is that in order for the jury to convict for armed robbery the victim must be endangered or threatened by the use or threatened use of a "firearm or other dangerous weapon, implement or means." *State v. Covington, supra.*

Thus, the trial judge, even without request for special instructions, should have submitted the lesser offense of common law robbery to the jury under proper instructions.

278 N.C. at 87, 178 S.E. 2d at 183.

In *State v. Thompson, supra,* the case in which the present defendant was tried and convicted of armed robberies committed at the Central Square Apartments, this Court found no error in the failure of the trial court to submit common law robbery as a possible verdict in that case. In that case, as in this one, the State's evidence showed that defendant and another man, each armed with a gun, committed the robberies. One of the State's witnesses, a victim of one robbery, testified on cross-examination that "I couldn't tell you if it was a toy pistol." In finding no error in the trial court's failure to submit common law robbery as a possible verdict in that case, the opinion of this Court pointed out that the State's witness expressed uncertainty only as to whether *one* of the guns employed by the robber might have been a toy but no uncertainty was expressed as to the other. On that basis the Court held that *State v. Bailey, supra* was not controlling in that case. In the present case some uncertainty, albeit minimal, was expressed by the State's witnesses as to whether both of the guns used were real or fake.

On authority of *State v. Bailey, supra,* we hold that the trial court in the present case committed error in failing to submit common law robbery as a possible verdict. For this error defendant must be awarded a

New trial.

Judge HEDRICK concurs.

Judge ERWIN dissents.

Judge ERWIN dissenting.

I respectfully disagree with my scholarly colleagues of the majority in this case. I find no prejudicial error in the trial of the defendant and vote "no error." The majority held on authority of *State v. Bailey*, 278 N.C. 80, 178 S.E. 2d 809 (1971), that the trial court in this case committed error in failing to submit common law robbery as a possible verdict for the jury to consider and awarded defendant a new trial. Common law robbery is a lesser included offense of armed robbery, and an indictment for armed robbery will support a conviction for common law robbery. Where there is evidence of defendant's guilt of common law robbery, it is error for the court to fail to submit the lesser offense to the jury. *State v. Bailey, supra; State v. Wenrich*, 251 N.C. 460, 111 S.E. 2d 582 (1959); *State v. Davis*, 242 N.C. 476, 87 S.E. 2d 906 (1955); *State v. Hicks*, 241 N.C. 156, 84 S.E. 2d 545 (1954); *State v. Keller*, 214 N.C. 447, 199 S.E. 620 (1938); *State v. Faulkner*, 5 N.C. App. 113, 168 S.E. 2d 9 (1969). The *presence of such evidence is the determinative factor in each case.* The record does not reveal such evidence in this case. All three victims of this robbery, Myra Wright, Beverly Shinn, and J. M. Lamond testified as State's witnesses on direct examination that defendant used a chrome pistol, and his companion used a sawed-off shotgun to commit the robbery. In my opinion, there was no evidence of probative value before the trial court on the lesser included offense of common law robbery.

The record shows that on cross-examination, Myra Wright testified:

"As to whether it is true that I don't know whether the shotgun about which I have testified was a real gun, a fake gun, a toy gun, or what kind of gun, whatever kind of gun it was, *it was metal and did not look like a toy.* No, I don't know that it wasn't a toy gun. No, I don't know whether it was a fake gun, either. With respect to the pistol about

which I have testified, *it was metal and did not look like a toy.* I do not know whether it was real or whether it was a toy. It was shiny like chrome." (Emphasis added.)

On cross-examination, J. M. Lamond testified:

"With respect to the pistol, I don't know whether it was a real pistol, fake pistol, or what kind of pistol. *It looked very real. It was not a cap pistol.*" (Emphasis added.)

I note the record does not reveal that Beverly Shinn had any uncertainty about the shotgun in question.

The record does not show sufficient conflict or uncertainty of the character of the weapons used to require the trial court to charge on the lesser included offense of common law robbery. In *Bailey*, defendant testified and denied any recollection of the alleged robbery or the possession by him of a pistol. This, in my opinion, created the conflict in the evidence along with the testimony of Loretta Wiliams, who stated on cross-examination that she did not know whether it was a "real or toy pistol." Such is not the case before us. The majority, relying on *Bailey*, would require victims of robberies to make an inspection of the weapons used to be able to testify whether or not the weapons were in fact real. I do not feel that such was the intent of *Bailey*.

I respectfully dissent.